EDWARD P. ATCAS AND OTHERS v. CREDIT
CLEARING CORPORATION OF AMERICA
AND OTHERS.

197 N. W. 2d 448.

February 25, 1972—No. 42832.

*Maslon, Kaplan, Edelman, Borman, Brand & McNulty* and *Charles Quaintance, Jr.,* for appellant.

*John E. Castor,* for respondents.

Heard before Knutson, C. J., and Murphy, Kelly, and Hachey, JJ.

RONALD E. HACHEY, JUSTICE.*

This action for rescission of a contract and damages was commenced in the district court in June 1970. One of the defendants, Credit Clearing Corporation of America, thereafter moved that the court stay trial of the action and order arbitration of the dispute as provided in the contract. The trial court denied the motion and on August 31 ordered that trial be had on the issue of whether plaintiffs were fraudulently induced to enter the contract. A motion to reconsider that order was thereafter filed and heard. The trial court reaffirmed the order of August 31 in all respects on September 30 and this appeal followed.

The chief issues on appeal are whether the question of fraud in the inducement of the contract should be determined by the district court of Minnesota or by arbitration in the State of Florida; whether the laws of Minnesota or the laws of Florida are applicable; and whether or not the arbitration clause in the contract is severable.

As a result of a newspaper ad which appeared in the Minneapolis Star and Tribune, plaintiffs Edward P. Atcas and James H. Overholt entered into a franchise agreement with Credit Clearing Corporation (hereafter, defendant) on February 24,

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

1969, effective on February 25, 1969. All negotiations took place in Minneapolis, Minnesota. Defendant signed the agreement in Florida. On April 23, the parties entered into a superseding franchise agreement which, in effect, enlarged the territory to be covered by plaintiffs, originally the State of Minnesota, by adding the States of North Dakota and South Dakota thereto.

Plaintiffs contend that at no time during the contract negotiations, and not until some time after they had made payment in part pursuant to the terms of the agreement of February 24, 1969, was the subject of arbitration ever mentioned. Plaintiffs further contend that arbitration was first mentioned on April 24, 1969, by an agent of defendant, who pointed out that any controversy regarding performance of the master-franchise agreement was to be arbitrated in Florida, but said nothing about arbitration of any controversy which might arise by reason of representations made by or on behalf of defendant in order to obtain the signatures of plaintiffs and their payment of money pursuant to the contract.

In brief, the contract provided that during a certain period of time the individual plaintiffs were to procure a minimum of 200 "member-merchants," for each of which plaintiffs agreed to pay defendant a $225 fee, or a total of $45,000. The sum of $33,750 was payable upon signing the agreement and the balance of $11,250 was to be paid November 25, 1969. Each member was to be charged a membership fee of which plaintiffs were to receive the major portion. Customers of the member-merchants who held a current credit card from defendant could be extended credit up to $100 per month. The member-merchants were then to forward credit accounts to defendant for collection, and defendant represented it would pay the merchants the amount of credit, up to $100, extended to customers, less a stipulated service discount. Plaintiffs were to receive 7 percent of all earned and collected discounts from all accounts in the territory. The contract further provided for the payment to plaintiffs of 50 per-

cent of renewal membership fees and the providing by defendant of certain advertising material and merchant contract forms.

Paragraph 11 of the contract reads as follows:

"Each clause of this agreement shall be severable and in the event that any clause, sentence, word or portion of the agreement is declared unenforceable, the remainder of the agreement shall be effective and binding on the parties."

Paragraph 14 of the contract reads as follows:

"This Agreement shall be governed by, and construed under the laws of Florida. Any controversy whatsoever, relating to this Agreement shall be settled by arbitration at Jacksonville, Florida, under the laws of the American Arbitration Association, before any action or proceeding can be brought or maintained. * * * Failure to enforce any of the provisions of this Agreement, by either party, shall not be construed as a waiver of those provisions."

Plaintiffs contend, and allege in their complaint, that defendant's agent, in outlining the working arrangement, represented to plaintiffs that each member-merchant was to extend credit up to a $100-per-month limit to customers who held defendant's credit card; that the merchant would send the charge slips of sales to customers to defendant, who in turn would remit monthly to the merchants for amounts of said charge slips, less a service charge which would vary from 4½ percent to 9 percent, depending upon volume; that defendant would undertake to collect from the customers; that defendant would provide complete training and guidance to plaintiffs; that defendant's employees were trained, knew defendant's service, and were bonded; that defendant would establish and train an effective sales force for plaintiffs and would have a leased phone line available for plaintiffs' use for guidance; that defendant would contact by mail some 10,000 merchants for possible leads for plaintiffs; that for each member-merchant that plaintiffs sold at $240 per 2-year contract, plaintiffs would receive $225 on the first 200 merchants

sold and $180 per contract thereafter, plus 7 percent of the discount fee defendant charged the merchants, to be paid quarterly; that the loss experience of member-merchants in some 32 states was less than 2 percent; that defendant would furnish plaintiffs with financial statements of defendant's business which plaintiffs could use in inducing prospective member-merchants to join; and that defendant would furnish supplies, sales tools, and sales manuals at no cost to plaintiffs. Plaintiffs allege also that they relied upon such representations; that defendant knew the representations were false; and that plaintiffs expended a total of $36,291.95. Plaintiffs further allege that about February 15, 1970, they discovered that the representations of defendant were not true and have ever since treated the contract as void ab initio. Asserting that they have received nothing for the money they have paid, plaintiffs seek to rescind and ask for a return of the money they have parted with.

Plaintiffs' claim that the contract was void ab initio because of fraud in the inducement and defendant's contention that the matter should be submitted to arbitration raise several issues. We will consider: (1) Which law is applicable, that of Florida or that of Minnesota? (2) Is a claim of fraud in the inducement a proper subject for arbitration? (3) Have respondents adequately pleaded a claim of fraud in inducing the arbitration agreement? (4) Is the arbitration clause severable?

■ Basically, there is no conflict of law between the States of Florida and Minnesota concerning arbitration since both states have enacted the Uniform Arbitration Act. The slight differences in the two acts, as adopted, do not affect the issues in this case. Hence, the two should be interpreted similarly since uniformity of interpretation, as well of statutory language, is the fundamental reason for the adoption of a uniform statute. See, Layne-Minnesota Co. v. Regents of the University, 266 Minn. 284, 290 (footnote 13), 123 N. W. 2d 371, 376 (1963).

■ To decide the issue of whether or not fraud in the induce-

ment is a proper subject for arbitration first requires reference to Minn. St. 572.08 and 572.09, which provide in part:

Minn. St. 572.08. "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Minn. St. 572.09. "(a) On application of a party showing an agreement described in section 572.08, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied."

Layne-Minnesota Co. v. Regents of the University, *supra,* involved an arbitration clause that was so ambiguous that the court could not determine whether or not the dispute involved was arbitrable under the contract. The court concluded that the sole issue was whether or not an agreement to arbitrate covered a dispute over a claim for additional compensation:

"* * * [Minn. St.] 572.09(a, b) expressly authorizes a court to interfere and protect a party from being compelled to submit to arbitration proceedings where no arbitration agreement exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract. * * * The difficulty lies in applying this rule when the intention of the parties is not clearly expressed. Where the parties are in conflict as to the scope of the provision for arbitration, and the question of the parties' intention as to such scope is reasonably debatable, the problem arises as to whether the court or the arbitrators shall decide the question. We believe in such cases the rule should be, and we hold, that the issue of arbi-

trability be initially determined by the arbitrators subject to a party's right reserved in § 572.19, subd. 1(3, 5), * * *." 266 Minn. 291, 123 N. W. 2d 376.

Hence, the following propositions may be stated: (1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court. (2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators subject to the rights of either party reserved under Minn. St. 572.19, subd. 1(3, 5). (3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate (§ 572.09[a, b]).

In the instant matter we are directly concerned with whether a claim of fraud in the inducement should be referred to the arbitrators or determined by the court. It appears to be a matter of first impression. While the contract does provide that "[a]ny controversy whatsoever, relating to this Agreement shall be settled by arbitration at Jacksonville, Florida," the point of significance here is that the contract contains no reference to fraud in the inducement or how that issue should be resolved if it is raised.[1] The record does disclose an agreement in writing which provides that each clause thereof shall be severable and that in the event any clause or portion is declared unenforceable, the remainder of the agreement shall be effective and binding on the parties; that the agreement shall be governed and construed

[1] The contract is a part of the record, but there is nothing before us concerning that part of the agreement which was verbal or oral in nature (as alleged by plaintiffs). In addition, there is nothing before us concerning the representations made by defendant's agent to the plaintiffs which might have induced plaintiffs to enter the contract and which were in addition to the verbal statements which plaintiffs claim were understood to be part of the agreement.

under the laws of Florida; and that any controversy whatsoever relating to the agreement shall be settled by arbitration at Jacksonville, Florida, under the laws of the American Arbitration Association before any action or proceeding can be brought or maintained. We must, therefore, determine whether the agreement is sufficiently broad to include an understanding of the parties that the issue of fraud in the inducement would be referred to arbitration and not be settled by the court; and, secondly, assuming that fraud in the inducement could be proved by plaintiffs, whether the matter should be referred to arbitration rather than settled by the court solely because of the explicit severability clause contained in the agreement.

An analysis of the manner in which a number of courts throughout the country have resolved these issues is helpful in formulating the rules to be applied in this and future Minnesota cases. Several decisions indicate that the language contained in the agreement will be determinative of the outcome since there is no reason why the parties cannot agree, if they wish to, that if a question arises as to whether the principal agreement was obtained by fraud, the question may be arbitrated. Robert Lawrence Co. Inc. v. Devonshire Fabrics, Inc. 271 F. 2d 402, 410 (2 Cir. 1959), certiorari dismissed pursuant to stipulation, 364 U. S. 801, 81 S. Ct. 27, 5 L. ed. 2d 37 (1960). See, also, Lummus Co. v. Commonwealth Oil Refining Co. Inc. 280 F. 2d 915, 924 (1 Cir. 1960); Necchi Sewing Machine Sales Corp. v. Sewline Co. 194 F. Supp. 602, 604 (S. D. N. Y. 1960).

Upon examination of decisions relative to the issue of whether the language in the agreement could be held either to comprehend or not comprehend fraudulent inducement, it is interesting to note that different courts have reached contrary conclusions when interpreting identical or similar phraseology in the various agreements. The following provisions have been held to comprehend the issue of fraudulent inducement:

"Any complaint, controversy, or question which may arise with respect to this contract that cannot be settled by the parties

thereto * * *." Robert Lawrence Co. Inc. v. Devonshire Fabrics, Inc. 271 F. 2d 402, 404.

"Any controversy, grievance or claim between the parties herein arising out of or related to this contract, its interpretation, performance, or breach, or out of the relationship between the parties or for any cause or reason whatsoever * * *." Necchi Sewing Machine Sales Corp. v. Sewline Co. 194 F. Supp. 602, 603.

"* * * [A]ny question [which] shall arise between [the contracting parties] touching the Contract * * *." Nelley v. Mayor and City Council of Baltimore, 224 Md. 1, 6, 166 A. 2d 234, 236 (1960).

"* * * Any controversy arising under or in relation to this contract * * *." Matter of Fabrex Corp. (Winard Sales Co.), 23 Misc. 2d 26, 200 N. Y. S. 2d 278, 279 (1960).

"In the event of any dispute, controversy or misunderstanding arising between the parties hereto, which may directly or indirectly concern or involve any of the terms, covenants or conditions hereof or the construction of any of its provisions or the general subject matter thereof, the parties agree to submit." Matter of Amphenol Corp. (Microlab), 49 Misc. 2d 46, 47, 266 N. Y. S. 2d 768, 769 (1965), affirmed without opinion, 25 App. Div. 2d 497, 267 N. Y. S. 2d 477 (1966).

The following provisions have been held not to comprehend fraudulent inducement:

"All disputes and/or differences which may arise in connection with the fulfillment and/or interpretation [of the contract] * * *." Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise, 239 F. 2d 689, 691 (4 Cir. 1956).

"* * * [A]ny dispute or difference [arising] under this Charter * * *." In re Kinoshita & Co. 287 F. 2d 951, 952 (2 Cir. 1961).

"* * * [Any question] as to the validity, interpretation or performance of this agreement." Matter of Wrap-Vertiser Corp.

(Plotnick), 3 N. Y. 2d 17, 18, 163 N. Y. S. 2d 639, 640, 143 N. E. 2d 366, 367 (1957).

"* * * [Controversies which] shall arise under this Contract * * *." Milton L. Ehrlich, Inc. v. Swiss Const. Corp. 21 Misc. 2d 506, 507, 197 N. Y. S. 2d 668, 670 (1960).

From this comparison, it can be concluded that, while the cases indicate that the language of the agreement will be analyzed to determine whether it is broad enough to require arbitration of a claim of fraud in the inducement, the courts have not been in accord in resolving the question of just what language is sufficiently broad to compel such arbitration. For this reason and because this question is of great significance, there is a need for clarification of the degree of specificity that will be required before a court will find that the parties have agreed to arbitrate the issue of fraud in the inducement.

A finding by the court that the arbitration clause is sufficiently broad to include fraud in the inducement does not, however, end the inquiry. There still remains the question of whether a fraudulent inducement will void a provision to refer all matters to arbitration, especially when the agreement clearly makes the arbitration portion thereof severable. Some authorities hold that if it is alleged that an arbitration clause was itself induced by fraud, there can be no arbitration of the question of fraud, at least where the party asserting the fraud takes proper action to avoid the contract and the arbitration clause contains no language expressly comprehending the issue of fraudulent inducement. In this situation proof of the alleged fraud amounts to proof that there was in fact no agreement to arbitrate. See, Moseley v. Electronic & Missile Facilities, Inc. 374 U. S. 167, 83 S. Ct. 1815, 10 L. ed. 2d 818 (1963); Robert Lawrence Co. Inc. v. Devonshire Fabrics, Inc. *supra;* Lummus Co. v. Commonwealth Oil Refining Co. Inc. *supra,* applying New York law; Matter of Kramer & Uchitelle, Inc. 288 N. Y. 467, 43 N. E. 2d 493 (1942); Matter of Mfrs. Chemical Co. Inc. v. Caswell, Strauss & Co. Inc. 259 App. Div. 321, 19 N. Y. S. 2d 171 (1940);

Royal Hair Pin Corp. v. Rieser Co. Inc. 15 App. Div. 2d 539, 222 N. Y. S. 2d 719 (1961); Murphy v. Morris, 12 N. J. Super. 544, 80 A. 2d 128 (1951).

There is also authority which holds that if the agreement to arbitrate is found to be a severable provision in the contract, that provision should be regarded as an undertaking separate and apart from the undertaking in the primary parts of the contract and should not be voidable unless there was fraud directly affecting the agreement to arbitrate, as distinguished from representations relating to the content or making of the principal agreements. Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm. 387 F. 2d 768 (3 Cir. 1967); see, Lummus Co. v. Commonwealth Oil Refining Co. Inc. 280 F. 2d 915, 923. In Lummus, the court concluded that under New York law it was required to hold that an arbitration agreement cannot be treated as separable. The result was to further hold that separability cannot be used as a basis for avoiding arbitration of the question of fraud in the inducement of the contract if the party opposing arbitration is at the same time seeking damages for fraud and thus in effect affirming the contract. The court was governed in that case by New York law. The decision indicates that there was no New York authority directly in point, but the court's conclusion was reached after consideration of New York decisions which indicate that only where it is found that the arbitration clause is valid can there be a basis for the jurisdiction of the arbitrators. The Federal court indicated that if it were not bound by New York law, it would have arrived at its decision by a different approach. It went on to state (280 F. 2d 923):

"Although we have assumed that Commonwealth has made a prima facie showing of voidability so far as the principal agreements are concerned, with respect to its agreement to arbitrate, considered of itself, there appear to have been no factual misrepresentations at all. If the agreement to build and the agreement to arbitrate are to be regarded as a single agreement, both promises were obtained by the one fraud, and the one must

fall with the other. But if the agreement to arbitrate is regarded as a separate undertaking, and particularly if it is broad enough to encompass any issue of fraud in the inducement, such an undertaking should not be voidable unless there was fraud directed specifically to it."

The court further pointed out the inherent dangers in preventing arbitration by holding that the arbitration clause is inseparable —such as destroying what the parties had intended; setting the stage for delaying actions; and inviting the injured party to cast what is basically a claim for breach of warranty or failure to perform (which would be arbitrable) into an action based on fraudulent inducement.

In construing the Federal Arbitration Act, Federal courts have held that arbitration clauses are separable, with the result that fraud in the inducement of other parts of the contract does not taint the arbitration clause unless the arbitration clause itself was induced by fraud. See, Robert Lawrence Co. Inc. v. Devonshire Fabrics, Inc. *supra*. The leading case on that issue is Prima Paint Corp. v. Flood & Conklin Mfg. Co. 388 U. S. 395, 87 S. Ct. 1801, 18 L. ed. 2d 1270 (1967). The Supreme Court held that a Federal court may decide the issue of fraud in the inducement only if it is alleged that there was fraud in the inducement of the arbitration clause itself rather than of the contract generally. The court stated its position clearly in the following words (388 U. S. 403, 87 S. Ct. 1806, 18 L. ed. 2d 1277) :

"* * * Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."

Upon further examination of decision law of other jurisdictions touching upon the issue of fraud in the inducement, it is to be noted that an important factor in determining whether

arbitration should be allowed or denied is the manner in which the question is raised. In brief, a majority of decisions hold that if the making of the principal contract, including the provision for arbitration itself, was induced by the fraud of one of the parties, the provision for arbitration will fall along with the principal contract if the aggrieved party exercises his power of avoidance; but it will not fall if he does not properly exercise that power. In other words, fraudulent inducement will not be arbitrated where the party asserting the fraud seeks to rescind the contract containing the arbitration clause, but will be arbitrated where the party seeks not rescission but damages for the loss caused him by the fraud. Lummus Co. v. Commonwealth Oil Refining Co. Inc. *supra;* Nelley v. Mayor and City Council of Baltimore, *supra;* Matter of Stupell (Lauer), 195 Misc. 177, 89 N. Y. S. 2d 192 (1949); Matter of Amerotron Corp. (Maxwell Shapiro Woolen Co.), 3 App. Div. 2d 899, 162 N. Y. S. 2d 214 (1957), affirmed without opinion, 4 N. Y. 2d 722, 171 N. Y. S. 2d 111, 148 N. E. 2d 319 (1958); Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise, *supra;* Murphy v. Morris, *supra;* Matter of Big W Const. Corp. (Horowitz), 278 App. Div. 977, 105 N. Y. S. 2d 827 (1951). See, also, 6A Corbin, Contracts § 1444A, p. 465.

Upon a review of the decisions hereinabove referred to and cited, in deciding the issue of whether fraud in the inducement should be determined by the court or by the arbitrators, we hold that in deciding each case the following factors shall be considered:

A. *Intent of the Parties.*

If the language contained in the agreement evinces an intent of the parties to specifically arbitrate the issue of fraud in the inducement, as well as other issues or controversies, or if the language used is sufficiently broad to comprehend that the issue of fraudulent inducement be arbitrated, then that issue is a proper subject for arbitration. Conversely, if there is no such intent in the agreement or if the language used is not sufficient-

ly broad to comprehend arbitration of that issue, the issue of fraud in the inducement will be decided by the court. From the record before us, we find and hold that there was no intent expressed by both parties to arbitrate the issue of fraud in the inducement nor does the language used in the agreement comprehend arbitration of that issue.

B. *Arbitration Proceedings To Be Stayed If Issue of Fraud in the Inducement Is Not Subject to Arbitration.*

Where the parties have not specifically agreed to arbitrate the issue of fraud in the inducement and the language used in the contract does not so comprehend, upon commencement of an action alleging fraud in the inducement arbitration proceedings will be stayed until the issue of fraud has been determined by the court. Whether the agreement to arbitrate is found to be severable or inseverable is of no significance because we hold that if fraud vitiating the primary subject matter of the contract is proved, it would also vitiate the arbitration clause.

C. *Complaining Party Must Properly Avoid the Contract.*

In order to stay arbitration proceedings on the grounds of fraud in the inducement of the contract, we hold that the party seeking such relief must properly proceed to avoid the agreement; that is, he must seek rescission but not damages, and he cannot rescind in part and affirm in part. His rescission of the contract must be in toto.

■ Defendant contends that plaintiffs have not sufficiently pleaded a cause of action of fraud. Rule 9.02, Rules of Civil Procedure, requires:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

Defendant argues that plaintiffs have failed to allege actual knowledge of the facts concealed and the duty to disclose the facts or deliberate concealment thereof. Upon an examination

of plaintiffs' complaint, particularly paragraphs V to IX, the following elements of fraud are pleaded: (1) False representations; (2) made with the intent to deceive; (3) plaintiffs took action or refrained from taking action in reliance on these misstatements; (4) resulting in damages; (5) which are proximately caused by the misstatements. We hold that the complaint adequately pleads a cause of action in fraud. See, Royal Realty Co. v. Levin, 244 Minn. 288, 69 N. W. 2d 667 (1955).

■ Concerning the issue of severability of the various provisions of the agreement, particularly the clause providing for arbitration, if that were the sole or crucial issue, defendant would prevail in this appeal. In reviewing the record, and in keeping with our previous decisions, we find that the arbitration clause is severable. The language of the clause providing for severability is clear, and the parties' intent to make the arbitration clause, and all other clauses, severable is equally clear. The intent of the parties is controlling. See, Henry Simons Lbr. Co. v. Simons, 232 Minn. 187, 44 N. W. 2d 726 (1950); Mulcahy v. Dieudonne, 103 Minn. 352, 115 N. W. 636 (1908); E. Edelman & Co. v. Queen Stove Works, Inc. 205 Minn. 7, 284 N. W. 838 (1939). However, since we hold that fraud in the inducement goes to vitiate the entire contract for the reasons herein given, it is immaterial for the purpose of this appeal whether the arbitration clause is determined to be severable or inseverable.

In passing, we do not intend to depart from our previous decisions relative to encouraging or discouraging arbitration, nor do we intend to revive or encourage the historical common-law animosity toward arbitration in general. We adhere to the holding of Layne-Minnesota Co. v. Regents of the University, *supra.* However, in resolving issues of fraud in the inducement of an agreement containing a clause to arbitrate, whether the clause is severable or inseverable, we conclude that the better approach is as outlined herein. We recognize that by asserting fraud in the inducement parties might attempt to litigate what amounts to a breach of part or parts of the agreement which might more

properly be the subject of arbitration. We are confident that when those occasions arise the trial courts will be cognizant of abortive attempts to negate arbitration and will speedily and summarily refer such matters to arbitration. Equally important are the words of the pertinent statute, Minn. St. 572.08, which expressly exempts from arbitration those issues where the grounds are the same as exist in law or equity for the revocation of any contract. When the making of the agreement itself is put in issue, as is the result of a claim of fraud in the inducement, that issue is more properly determined by those trained in the law. Issues involving a breach or violation of the agreement, which are primarily issues of fact, can be more properly left to the expertise of those trained in the respective fields of arbitration. There is ample encouragement for both approaches within the terminology of the statute.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.