MINNESOTA EDUCATION ASSOCIA-
TION, et al., Appellants,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 495, GRAND MEADOW, Minne-
sota, et al., Respondents.

No. 49663.

Supreme Court of Minnesota.

March 21, 1980.

Robins, Davis & Lyons, Stephen D. Gordon and Ernest I. Reveal, III, St. Paul, for appellants.

Alderson, Ondov, Leonard & Sween and Raymond B. Ondov, Austin, for respondents.

Peterson, Popovich, Knutson & Flynn and Peter S. Popovich and Patricia A. Maloney, St. Paul, amicus curiae, for Minnesota School Boards Assn.

Heard before PETERSON, KELLY, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

Plaintiffs, the Minnesota Education Association (MEA) and Grand Meadow Education Association (GMEA), brought this action against defendants, Independent School District No. 495 (school district) and individual members of the Board of Education, alleging that defendants had made unilateral changes in the teachers' terms and conditions of employment, seeking to compel arbitration, and seeking a judgment that defendants' refusal to arbitrate constituted an unfair labor practice under the Public Employment Labor Relations Act, Minn.Stat. §§ 179.61 to 179.77 (1978) (PELRA). The Mower County District Court found the pay grievance not arbitrable because outside the arbitration clause, found a reasonable doubt as to the arbitrability of the preparation time grievance, and ruled that the school district's refusal to arbitrate did not constitute an unfair labor practice. Both parties appeal. We affirm.

Plaintiff GMEA is the "exclusive bargaining representative" under PELRA of all certified teachers employed by Independent School District No. 495, Grand Meadow, Minnesota. Defendant school district is a "public employer" under PELRA, and the individual defendants are officers and members of the Board of Education for the school district.

On January 11, 1978, the GMEA and the school district entered into a collective bargaining agreement (hereinafter "master contract") establishing the terms and conditions of employment for teachers employed by the school district during the academic years 1977–79. As required by Minn.Stat. § 179.70,[1] the master contract provides for arbitration of grievances as follows:

A claim by a teacher or the [GMEA] that there has been a violation; misinterpretation or misapplication of any provision of this contract or misinterpretation or misapplication of any rule, order or regulation of the Board may be processed as a grievance as hereinafter provided.

On September 12, 1977, the GMEA submitted a grievance alleging that the school district had unilaterally altered terms and conditions of employment and violated past practice by assigning some teachers to six classes per day, one more than was customary, without providing additional compensation (hereinafter the "extra pay for extra class" grievance). On September 23, 1977, Galen Quaderer, a teacher and "Chief Teacher Negotiator" for the GMEA, filed a grievance alleging that he had been deprived of "a full class period free from student contact" for preparation time, in violation of past practice. The GMEA and the board failed to resolve these grievances, and the GMEA sought arbitration. The board refused to arbitrate on grounds that the grievances were not arbitrable under the provisions of the master contract, and the GMEA brought suit to compel arbitration.

Three issues are raised by this appeal:

1. Is the extra pay for extra class grievance arbitrable?

---

1. Minn.Stat. § 179.70, subd. 1 (1978) provides that all public collective bargaining contracts shall include a grievance procedure which shall provide compulsory binding arbitration of grievances.

2. Is the preparation time grievance arbitrable?

3. Does defendants' failure to arbitrate either of these grievances constitute an unfair labor practice under PELRA?

Defendants also argue that, contrary to some language in earlier decisions, where arbitrability is reasonably debatable, the Uniform Arbitration Act, Minn.Stat. ch. 572 (1978), requires that the determination of whether a given grievance is subject to arbitration is properly for the court, not the arbitrator. Because this issue was not raised before or decided by the court below, we do not consider it here. *See Fingerhut Products Co. v. Commissioner of Revenue*, 258 N.W.2d 606 (Minn.1977); *Rathbun v. W. T. Grant Co.*, 300 Minn. 223, 219 N.W.2d 641 (1974).

■ The first question to be determined is whether the GMEA's grievance that the district unilaterally altered terms and conditions of employment and violated past practice by not providing extra pay for teachers who teach six as opposed to the usual five classes per day is arbitrable. In *State v. Berthiaume*, 259 N.W.2d 904 (Minn. 1977), we held the Uniform Arbitration Act, Minn.Stat. ch. 572, applicable to a public sector collective bargaining agreement containing an arbitration clause. *See also City of Richfield v. Local No. 1215, International Association of Firefighters*, 276 N.W.2d 42, 50 (Minn.1979). Under our analysis, the act established the following rules for determination of the arbitrability of a grievance which, citing *Layne-Minnesota Co. v. Regents of the University of Minnesota*, 266 Minn. 284, 123 N.W.2d 371 (1963), we identified in *Atcas v. Credit Clearing Corp.*, 292 Minn. 334, 197 N.W.2d 448 (1972):

Hence, the following propositions may be stated: (1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court. (2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators subject to the rights of either party reserved under Minn.St. 572.19, subd. 1(3, 5). (3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate (§ 572.09[a, b]).

292 Minn. at 341, 197 N.W.2d at 452. Recognizing that the "underlying policy and purpose" of PELRA is to discourage litigation and promote simple, informal procedures for resolution of conflict, the court reiterated the above standard for public employee collective bargaining contracts in *State v. Berthiaume* in this way:

\* \* \* Consistent with this underlying policy and purpose, we have steadfastly held that the issue of arbitrability, when raised in judicial proceedings to compel or stay arbitrability, is to be determined by ascertaining the intention of the parties from the language of the arbitration agreement itself. Where the intention of the parties as to whether the dispute is arbitrable is reasonably debatable, the arbitrator should resolve the issue in the first instance subject to the right of a party to challenge the arbitrator's resolution in proceedings to vacate the award. *Layne-Minnesota Co. v. Regents of the University, supra*. Additional support for our belief that the "reasonably debatable" standard is consistent with the tenor of the uniform act is the expectation that where the arbitrator finds that the dispute is not arbitrable, or the converse, but decides the merits to the satisfaction of the objecting party, the result will be accepted without resort to the courts.

259 N.W.2d at 909. Thus, our decisions establish that, where the arbitrability of a dispute is subject to "reasonable debate," the arbitrator himself is to make a determination on the question of arbitrability "in the first instance." After arbitration, in an action to vacate the award, the trial court considers the question of arbitrability *de novo. Ibid. See also United States Fidelity & Guaranty Co. v. Fruchtman*, 263 N.W.2d 66, 69 (Minn.1978).

■ In support of its allegation that there was a district policy granting teachers extra pay for extra classes taught, the GMEA offered two affidavits to that effect, one signed by the director of the Hiawatha Valley Teachers organization, a sub-unit of the MEA of which the GMEA is a member, and another signed by the treasurer of the GMEA. In addition, the GMEA introduced the minutes of the October 4, 1967 meeting of the school board, at which the board resolved to pay an additional $385 each to a group of teachers "who are teaching six classes, as opposed to the usual five classes * * *."

Defendant school district filed a motion for summary judgment, supported by an affidavit of Donald L. Hansen, Superintendent of Schools of the school district and an "ex officio" member of the school board. Mr. Hansen's affidavit indicated that the 1967 resolution was an isolated event, not an expression of continuing policy, and that the minutes make no reference to the proportion of the teachers' salary represented by $385. Mr. Hansen stated that from 1968 to 1976, the school district utilized a "modular schedule" consisting of 19 or 20 20-minute periods per day and that during those years many teachers were required to teach "the equivalent of six class periods per day." On oral argument, the school district noted that the master contract for 1977–79, negotiated in the fall of 1977 and not signed until January 1978, makes no provision for extra pay for additional classes taught, and argued strongly that the GMEA's acquiescence in this contract at a time when it was aware of the district's position with respect to extra pay is evidence that no extra pay practice existed.

The arbitration clause in the master contract makes only certain grievances subject to arbitration: claims that the master contract, or school board rules, orders or regulations have been violated, misinterpreted or misapplied. The master contract and school board rules and regulations make no reference to a school district policy granting teachers extra pay for extra classes taught. Because this controversy is not within the scope of the arbitration clause of the collective bargaining agreement between the parties, the trial court properly refused to compel arbitration.

■ 2. We consider next the arbitrability of plaintiffs' preparation time grievance. In support of its allegation that there was a district policy providing each teacher with one full, uninterrupted class period for preparation, the GMEA offered Galen Quaderer's affidavit to that effect. The Hansen affidavit offered by the district contradicts that assertion and demonstrates convincingly by reference to various teachers' daily schedules that no such preparation period has been provided. The trial court found that no clause in the master agreement, nor rule, regulation or order of the board, made any provision regarding preparation time. However, the court noted that Article III of the master contract provides: "Nothing contained herein shall be construed to deny or restrict any teacher, (sic) rights under the Minnesota School Laws or other applicable laws and regulations." Article III, D. Minnesota regulations provide that "[e]ach secondary school teacher shall have one period during the school day for preparation and conferences." 5 M.C.A.R. Edu. 46(c)(2) (1977). The trial court concluded that "the contract clause quoted guarantees the teachers rights under applicable regulations," found arbitrability of the preparation time grievance "reasonably in doubt," and ordered the school district to submit this grievance to arbitration.

Respondent school district argues that the trial court's order compelling arbitration of the preparation time grievance should be vacated because an incorrect decision by the arbitrator would result in a *de novo* determination of arbitrability in the trial court and possibly another appeal to this court, and that such a procedure would entail unnecessary delay and expense. This argument ignores the possibility that the arbitrator would reach a favorable conclusion, and at far less expense and delay to either the school district or the GMEA than is occasioned by the GMEA's action to com-

pel arbitration, and by the school board's defense of that action. Furthermore, we have previously disposed of the school district's contention in *Layne-Minnesota Co. v. Regents of the University of Minnesota*, 266 Minn. 284, 123 N.W.2d 371 (1973):

> If parties voluntarily agree to submit disputes to arbitration, the arbitration process should go forward unimpeded by judicial interference. Where the process has failed to dispose of the controversy, the rights of the parties to litigate the issue of arbitrability is not only unimpaired but both the court and the parties will be immeasurably aided by what has occurred. Where litigation follows arbitration, the cost to the parties is increased and one of the benefits claimed by proponents of arbitration is defeated. However, it must be remembered that this cannot be charged to the act but to the contract over which the parties alone had control.

266 Minn. at 293, 123 N.W.2d at 377.

The principle of preparation time is recognized by the State Board of Education in its rules and regulations, and the master contract itself recognizes such rules and their applicability in Article III, D. The trial court properly found the arbitrability of the preparation time grievance subject to reasonable doubt, and ordered arbitration.

3. Plaintiffs argue that the school district's refusal to submit their grievances to arbitration constituted an unfair labor practice under PELRA,[2] regardless of the school district's "good faith" or lack thereof. As we noted in *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977), PELRA and the Uniform Arbitration Act are to be construed as consistent with each other. A finding that the school district's refusal to arbitrate constitutes an unfair labor practice would "chill" rights granted under the Uniform Arbitration Act to contest arbitrability initially in court. A fair interpretation would make the school district's refusal to arbitrate an unfair labor practice only where the grievance falls into the first of

the categories described in *Atcas v. Credit Clearing Corp. of America*, 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972): where " * * * the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract." Neither the extra pay grievance, which is clearly not within the scope of the arbitration clause, nor the preparation time grievance, whose arbitrability was reasonably in doubt, falls into this category. We affirm the trial court's determination that the school district's failure to arbitrate these grievances was not an unfair labor practice.

Affirmed.

---

2. Minn.Stat. § 179.68, subd. 2(6), establishes that it is an unfair labor practice for an employer to "refus[e] to comply with grievance procedures contained in an agreement * * *."