**DULUTH FEDERATION OF TEACHERS, LOCAL 692, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 709, Respondent,**

**Peter Bergman, et al., intervenors, Respondents,**

**Sheldon Johnson, intervenor, Respondent,**

**Duluth Principals and Supervisors Association, et al., Intervenors.**

**No. C4-83-503.**

Supreme Court of Minnesota.

Feb. 8, 1985.

Rehearing Denied April 11, 1985.

William D. Watters, Nancy L. Gores, Duluth, for appellant.

James N. Abelsen, Duluth, Dale Swanson, Forest Lake, for Peter Bergman, et al.

Daniel Mundt, Duluth, for Sheldon Johnson.

Joseph E. Flynn, Susan J. Schoell, St. Paul, for Minnesota School Bd. Assoc.

Eric R. Miller, John R. Tunheim, St. Paul, for Minnesota Educ. Assoc.

PETERSON, Justice. .

Appellant, Duluth Federation of Teachers, Local 692 (union), instituted this action against respondent Independent School District No. 709 (district) seeking an injunction restraining unfair labor practices and compelling arbitration of grievances. The union's complaint stemmed from the district's computation of the seniority of laid-off administrators wishing re-employment as teachers pursuant to Minn.Stat. § 125.-17, subd. 11 (1984), instead of the teachers' collective bargaining agreement, resulting in the layoff of teachers and the employment of administrators in their positions. The union appeals from the judgment of the St. Louis County District Court refusing arbitration and upholding computation of the seniority of administrators pursuant to section 125.17, subd. 11. We affirm.

The union is the exclusive bargaining representative of classroom teachers in the district. Administrators are not members of this bargaining unit. Since authorized by Act of March 25, 1974, ch. 237, 1974 Minn.Laws 367, applicable only to Duluth, the collective bargaining agreements between the union and the district have contained provisions governing the calculation of seniority that differ from the provisions in section 125.17, subd. 11, which ordinarily would have controlled. Whereas section 125.17, subd. 11, gives seniority credit for total years employed with the district, the 1981–83 collective bargaining agreement, the subject of this action, provides in Article XXIII that only service within the bargaining unit will apply toward seniority for teaching positions and that an employee who is returning after transfer to another bargaining unit "will be granted credit for prior service only if the return to bargaining unit service is within two years of the date of such interruption." [1]

In May 1982, because of a decline in school enrollment, the district adopted a resolution terminating approximately 180 teachers at the close of that school year and seven administrators in August 1982. Each teacher holding tenure rights was given a hearing as required by Minn.Stat. § 125.17, subd. 5 (1984); those teachers having the least seniority were laid off in June.

Administrators having the least seniority were removed from administrative positions, but, rather than laying them off, the district considered them for teaching positions for which they were qualified.[2] Al-

---

1. Article XXIII, in relevant part, provides:
   1. *In calculating service for seniority purposes, all service within the bargaining unit will be counted* as well as all leave time granted by the School Board to a bargaining unit employee, provided that such leave time is immediately followed by continued employment *and shall not include any time on leave while an employee of the School Board in a position not in this bargaining unit.*

   \* \* \* \* \* \*

   In calculating seniority an employee who is re-employed in the bargaining unit whose continuous service has been interrupted for any reason, including transfer to non-bargaining unit employment or termination, will be granted credit for prior service only if the return to bargaining unit service is within two

years of the date of such interruption if the employee had previously accumulated bargaining unit senority [sic] of two years or more and, if less, the return to bargaining unit service must be within a period of time not greater than that equal to the amount of accumulated seniority at the time his or her continuous service was interrupted, provided this limitation is not applicable to teachers holding re-employment rights under "C" of this article.
(emphasis added).

2. The parties do not dispute that the administrators, all former classroom teachers in the district, were qualified for teaching positions under section 125.17, subd. 11, as evidenced by licensure from the State of Minnesota. *Berland*

though the seniority provisions in the teachers' collective bargaining agreement purported to cover all employees seeking teaching positions and deprived the administrators of all seniority because they had been out of the teachers' bargaining unit for more than 2 years, the district determined that the provisions of the bargaining agreement did not apply to administrators seeking re-employment as teachers. Rather, the district computed the seniority of the administrators pursuant to Minn.Stat. § 125.17, subd. 11, which gives credit for district-wide service:

> Subd. 11. (a) Any teacher whose services are terminated on account of discontinuance of position or lack of pupils shall receive first consideration for other positions in the district for which that teacher is qualified. *In the event it becomes necessary to discontinue one or more positions, in making such discontinuance, teachers shall be discontinued in any department in the inverse order in which they were employed.*

(emphasis added). Under this provision, administrators were transferred to the teachers' seniority list based upon their initial date of licensed employment in the district. Because all of the administrators had more seniority than the affected teachers when seniority was computed under section 125.17, subd. 11, the district, on August 10, 1982, terminated six additional teachers, employing instead six administrators in the teaching positions, and employed two additional administrators in teaching positions that had recently been vacated.

As a result of the district's determinations, the union began this action in St. Louis County District Court for injunctive relief restraining the district's computation of seniority otherwise than under the collective bargaining agreement as an unfair labor practice and seeking an order compelling the district to arbitrate grievances filed by the teachers who had been laid off or who had been denied re-employment because administrators had been transferred to teaching positions. Motivating both the grievances and the commencement of the district court action was the union's claim that Act of March 25, 1974, ch. 237, 1974 Minn.Laws 367, authorized the district to negotiate contractual provisions for computing seniority which differed from section 125.17, subd. 11, and that the district should have followed the collective bargaining agreement to compute seniority for purposes of re-employment as teachers. The district countered that section 125.17, subd. 11, governs and, furthermore, that the construction of chapter 237 urged by the union is unconstitutional because it authorizes deprivation of administrators' seniority rights without due process. After holding that arbitration of the issue would be improper, the trial court concluded that negotiation of a provision affecting administrators' rights was not authorized and thus did not reach the constitutional issue.[3] This appeal followed.

■ 1. Initially we conclude that a court, not an arbitration, proceeding is the proper forum for deciding the issue. The collective bargaining agreement specifically provides that an arbitrator shall not "have authority to determine whether any of the provisions of this agreement are unlawful." What the union seeks to arbitrate is essentially whether applying the seniority provisions of the collective bargaining agreement to administrators is authorized by chapter 237; if it is not, the provisions as applied to administrators are unlawful under section 125.17, subd. 11. The issue is therefore one that the parties intended to exclude from arbitration, and as such, arbitration may not be compelled. *See e.g., State v. Berthiaume,* 259 N.W.2d 904, 909 (Minn.1977); *Atcas v. Credit*

---

*v. Special School District No. 1,* 314 N.W.2d 809, 812 (Minn.1981).

**3.** The district court also granted the affected administrators, the Duluth Principals and Su-

pervisors Association, and the Education Directors Association the right to intervene in this action.

*Clearing Corp. of America*, 292 Minn. 334, 197 N.W.2d 448 (1972).

■ 2. The computation of seniority for the termination of these administrators would ordinarily be controlled by section 125.17, the Teacher Tenure Act, because all of the administrators come within its definition of "teacher"—"every person regularly employed, as a principal, or to give instruction in a classroom, or to superintend or supervise classroom instruction." Minn. Stat. § 125.17, subd. 1(a) (1984). It is undisputed that our decisions in *Berland v. Special School Dist. No. 1*, 314 N.W.2d 809 (Minn.1981), and *McManus v. Independent School Dist. No. 625*, 321 N.W.2d 891 (Minn.1982), establish that under Minn. Stat. § 125.17, subd. 11, these administrators are entitled to credit for district-wide seniority and, as a result, to the teaching positions they were given.

The union contends, however, that chapter 237, which authorizes negotiation of seniority provisions contrary to those of section 125.17, subd. 11, requires that the seniority of administrators wishing re-employment as classroom teachers be computed under the collective bargaining agreement. Specifically, chapter 237 authorizes negotiation by "the exclusive representative *of teachers as defined by Minnesota Statutes, 1973 Supplement, Section 179.-63, Subdivision 13 * * * with respect to the termination of such teachers* due to discontinuance of position or lack of pupils within the school district, which may include a method, system or scheme other than that provided by Minnesota Statutes, Section 125.17, Subdivision 11, or any act amendatory thereof." (emphasis added). "Teachers"—as defined by Minn.Stat. § 179.63 subd. 13 (1974)—includes only classroom teachers, not administrators. Therefore, although chapter 237 authorizes negotiation of provisions affecting the layoff of classroom teachers, it authorizes no such negotiation as to the layoff of administrators. The seniority rights of administrators, even those seeking re-employment as classroom teachers, are still governed by Minn.Stat. § 125.17, subd. 11.[4]

This interpretation is mandated by the legislature's explicit, limited authorization in chapter 237 to negotiate provisions differing from those in section 125.17, subd. 11, only with respect to classroom teachers, not for all teachers covered by section 125.-17, subd. 11. This interpretation, moreover, fulfills one of the primary purposes of the Teacher Tenure Act: to benefit the district by retaining employees experienced in the district in positions for which they are qualified. *Berland*, 314 N.W.2d at 812.

---

4. Our dissenting colleague would construe chapter 237 differently, notwithstanding its explicit terms, relying upon a history of collective bargaining in which the district and the union negotiated the contested contractual provision and upon the defeat of a proposed amendment that would have specifically invalidated the contested provision.

While it is no doubt true that the district was willing to negotiate such a provision regardless of the explicit terms of the authorizing statute—because at the time of negotiation the district did not foresee that any administrators would be laid off—the district's willingness to act contrary to the express language of chapter 237 is not a source of interpretation, nor is the district by such action foreclosed from later asserting the plain meaning of the statute. The district, moreover, cannot dispense with the statutory rights of administrators. Although it is also probably true that the district actively supported the passage of chapter 237, permitting Duluth to negotiate provisions differing from Minn.Stat. § 125.17, subd. 11, it is important to note that the particular portion of the collective bargaining agreement now in controversy involves only a small part of a larger statute generally authorizing negotiation of a broader range of seniority issues.

Negotiation by the district and the union of the provision stripping administrators of seniority rights did prompt the administrators to undertake passage of an amendment to which our dissenting colleague refers. The proposed amendment was, as noted, defeated in committee. The discussion in committee indicates, however, that the senators did not analyze the language of chapter 237 and therefore did not understand the full extent of the issue but simply voted down the amendment on Senator Borden's comment that the legislature should not interfere with collective bargaining. Furthermore, what was intended by chapter 237 is determined by the intention of the legislature that adopted it in the first instance, as distinguished from a legislative committee in a subsequent legislative session appearing to interpret it.

Teachers would be prompted to leave a district where they were forced to choose between accepting a more responsible position or rejecting promotion solely to retain seniority in order to protect job security. As we stated in *McManus:*

> A teacher would be discouraged from accepting a position as principal if it meant losing all seniority in the school system. A principal in such a situation, while experienced and tenured in the school district, could not avoid demotions and terminations associated with declining enrollments. Such a result is inconsistent with the clear intent of Minn. Stat. § 125.17 to give preference to teachers who have been employed in the district longer periods of time.

321 N.W.2d at 893. (citations omitted).

Affirmed.

YETKA, Justice (dissenting).

I dissent. While it is true that the contract in this case conflicts with Minn.Stat. § 125.17, subd. 11 (1984), the legislature specifically granted the Duluth School District power to negotiate a contract which "may include a method, system or scheme other than that provided by Minnesota Statutes, Section 125.17, Subdivision 11, or any act amendatory thereof." Act of March 25, 1974, ch. 237, § 1, 1974 Minn. Laws 367. The language of the statute could not be clearer. It allows the school district and its employees to negotiate, as they did, a seniority and recall provision without regard to subdivision 11 of chapter 125.17.

This intent is clearly seen in the legislative history of chapter 237. An amendment ensuring the seniority rights of administrators was proposed in 1978. It provided that:

> Any written agreement authorized by Section 1 of this act shall not alter or abridge the rights of other certificated employees governed by Minnesota Statute, 1977 Supplement, Section 125.17, subdivision 11, if they become subject to such agreement.

S.F. # 1781 § 85 (1978). Senator Borden moved to strike the proposed amendment as an unwarranted legislative interference in the collective bargaining procedures authorized by chapter 237. Testimony of Senator Borden, Minnesota Senate, Finance Committee, March 6, 1978. The motion carried, striking the amendment.

In any event, at oral argument, the attorney for the school district admitted that the Board of Education and the Duluth Federation of Teachers negotiated a separate contract and that that contract did in fact affect the seniority rights of not only teachers, but principals as well when and if the principals wanted to return to teaching and that the special legislation applying to the City of Duluth, Chapter 237, was sought and passed to sanction such a contract. Yet, the Board of Education now takes the position that the act is not broad enough to affect seniority rights of the administrators. The reason given is that the Board of Education never expected that economic conditions would reach the point where it would affect the necessity of discharging school administrators and principals. They now argue that the statute they presumably helped prepare and supported for passage is not broad enough to cover administrators or affect their seniority. I find it outrageous that the school board would knowingly participate in drafting and lobbying for a statute that they admit was intended to affect the very purposes accomplished by the collective bargaining agreement and yet say that the statute was not drafted effectively enough to accomplish the purpose so that they can now slip out of the scope of the statute.

Interpreting the statute to allow negotiation of a collective bargaining agreement which divests administrators of seniority rights raises the issue of whether the administrators had a property right in their seniority status which was deprived without due process of law. Whether one has a property right depends on whether a person is entitled to it for the period of time in question. *Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). Seniority rights under

collective bargaining agreements still in effect are property rights. *See, e.g., Nord v. Griffin*, 86 F.2d 481, 483 (7th Cir.1936), *cert. denied*, 300 U.S. 673, 57 S.Ct. 612, 81 L.Ed. 879 (1937). Seniority rights are, however, generally the creation of the collective bargaining agreement and only survive for the life of that agreement. *Cooper v. General Motors Corp.*, 651 F.2d 249, 250–51 (5th Cir.1981).

The seniority rights in this case were, in the first instance, a legislative grant. *See Cournoyer v. American Television & Radio Co.*, 249 Minn. 577, 581, 83 N.W.2d 409, 412 (1957). The legislature, however, granted an exemption from the seniority statute. While seniority rights given by statute cannot normally be contracted away, here the seniority rights were contracted away under specific legislative authorization. As in the private sector situation, where seniority rights only survive the life of a collective bargaining agreement, this statutory grant of seniority rights only survives the statute granting them. Since the legislature granted an exemption from section 125.17, subdivision 11 to Duluth, the administrators had no property right to seniority. Thus, there could be no deprivation without due process.

Since the collective bargaining agreement was negotiated in accordance with chapter 237, I would reverse the trial court.