**MINNESOTA COMMUNITY COLLEGE FACULTY ASSOCIATION, Applicant, Appellant,**

**v.**

**The STATE of Minnesota, et al., Respondents.**

**Nos. C6–96–2186, CX–96–2188.**

Court of Appeals of Minnesota.

April 29, 1997.

Harley M. Ogata, Minnesota Education Association, St. Paul, for appellant.

Susan J. Thompson, St. Paul, for respondents.

Considered and decided by RANDALL, P.J., TOUSSAINT, C.J., and KLAPHAKE, J.

## OPINION

RANDALL, Judge.

Appellant Minnesota Community College Faculty Association (MCCFA) moved the district court to compel respondent Minnesota State Colleges and Universities (MnSCU) to proceed to arbitration on the propriety of MnSCU's refusal to recognize two Minnesota Community College System (MCCS) and MCCFA faculty appointments of Ruth Braxton–Brown. The district court denied MCCFA's motion, holding that the dispute was not arbitrable.

On appeal, MCCFA argues that the district court erred by denying MCCFA's motion for arbitration. MCCFA argues that the parties' collective bargaining agreement requires arbitration of the dispute.

## FACTS

This appeal involves a dispute between appellant Minnesota Community College Faculty Association (MCCFA) and respondent Minnesota State Colleges and Universities (MnSCU). Under the parties' collective bargaining agreement (Agreement), MCCFA represents all faculty of Minnesota Community Colleges in negotiations with MnSCU.

Article 5 of the Agreement provides that except as expressly stated herein [*MnSCU*] *shall retain* whatever rights and authority are necessary for it to operate and direct the affairs of the colleges in all of their various aspects, including * * * *the right to select, direct, and assign faculty members.*

(Emphasis added.) Article 18, section 1, subdivision 4 states:

If it is to the mutual advantage of the faculty members and the college president, a temporary part-time faculty member may be granted unlimited part-time status. The faculty member must have been employed continuously for four years * * *.

* * *

Upon mutual agreement between [MCCFA] and the [Minnesota Community College] System Office, current unlimited part-time faculty may be granted an unlimited full-time position at their college which includes their current part-time assignment.

On March 8, 1995, Greg Braxton–Brown, Chancellor of the Minnesota Community College System (MCCS), appointed his wife, Ruth Braxton–Brown, to an unlimited part-time faculty position at Itasca Community College (Itasca). On April 13, 1995, pursuant to agreement between MCCFA and MCCS, the Minnesota Community College Board appointed Mrs. Braxton–Brown to an unlimited full-time faculty position. Appellant concedes that with the merger, pending legislation, and faculty concerns about job security, Chancellor Braxton–Brown increased his spouse's chances of not being economically disadvantaged by the merger.

By letter dated November 16, 1995, MnSCU notified Mrs. Braxton–Brown that MnSCU would not recognize her appointments because they were unauthorized. MnSCU also informed Mrs. Braxton–Brown that because her appointments were unauthorized, MnSCU would treat her current appointment as temporary. Itasca terminated Mrs. Braxton–Brown's employment effective May 30, 1996.

MCCFA requested that MnSCU recognize Mrs. Braxton–Brown's appointments or submit to arbitration pursuant to the Agreement. Article 24 of the Agreement provides:

> *Section 3.  Grievances.*  A grievance is defined as a dispute or disagreement raised in writing by a faculty member of the Association against the employer involving the interpretation or application of the specific provisions of this Contract * * *.
>
> * * *
>
> *Step 3.*  If the grievance is not settled * * * the Association may refer the grievance to arbitration * * *.

MnSCU refused to submit to arbitration on this issue. On May 29, 1996, MCCFA moved the court to compel MnSCU to submit to arbitration. The district court denied MCCFA's motion on September 18, 1996.

Mrs. Braxton–Brown moved to Kentucky in October 1996. On October 29, 1996, MCCFA appealed the district court's denial of MCCFA's motion to compel arbitration. On appeal, MCCFA challenges the district court's conclusion that the parties' dispute as to whether Chancellor Braxton–Brown and MCCFA had authority to appoint Mrs. Braxton–Brown is not arbitrable. The parties informed the court in their report on mandatory settlement discussion that they have settled all other claims previously disputed in this litigation.

## ISSUE

1.  Is this case moot?

2.  Did the district court err by finding that the parties' dispute over the authority to appoint Mrs. Braxton–Brown was not arbitrable?

## ANALYSIS

### I.

"If the court is unable to grant effectual relief, the issue raised is deemed to be moot resulting in dismissal of the appeal." *Matter of Schmidt,* 443 N.W.2d 824, 826 (Minn.1989) (citation omitted). "Moreover, the court does not issue advisory opinions, nor decide cases merely to establish precedent." *Id.* (citation omitted).

Here, Mrs. Braxton–Brown has moved to Kentucky and does not request reinstatement at Itasca. MCCFA contends, however, that MnSCU's alleged violation of the Agreement has harmed Mrs. Braxton–Brown. MCCFA is entitled to seek damages on behalf of Mrs. Braxton–Brown. Because a district court could award money damages, it is not "unable to grant effectual relief." This case is not moot and we decide it on the merits.

### II.

Determining whether a party has agreed to arbitrate a particular dispute is a matter of contract interpretation that an appellate court reviews de novo. *Johnson v. Piper Jaffray, Inc.,* 530 N.W.2d 790, 795 (Minn.1995).

On a motion to compel arbitration, a court must determine from the language of the arbitration clause whether the parties agreed to submit the disputed issue to arbitration. *Cloquet Ed. Ass'n v. Independent Sch. Dist. No. 94,* 344 N.W.2d 416, 418 (Minn. 1984). If it is reasonably debatable whether the parties intended to arbitrate an issue, arbitrability is to be initially determined by an arbitrator, and a court may grant a motion to compel arbitration. *Atcas v. Credit Clearing Corp.,* 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972). A court will deny a motion to compel arbitration, however, where the court concludes based on the language of the arbitration clause that the parties did not intend to arbitrate the matter. *Id.*

Here, MCCFA contends that the Agreement governs whether Chancellor Braxton–Brown and MCCFA had authority to appoint Mrs. Braxton–Brown, and that any dispute concerning such authority is arbitrable. MCCFA argues that because the Agreement "states that the MCCFA and system office may, by mutual agreement, grant unlimited full-time status to current employees" and the parties dispute whether that occurred here, the dispute involves an "interpretation or application" of the Agreement within the meaning of the Agreement's arbitration

clause and is therefore arbitrable. We disagree.

■ The Agreement states that MnSCU retains the right to select faculty members except as otherwise provided in the Agreement. Contrary to MCCFA's assertions, article 18, section 1, subdivision 4, paragraph 5 does not permit unlimited full-time appointments for all "current employees." Rather, it applies only to "current unlimited part-time faculty," and subdivision 4, paragraph 1 authorizes appointments to unlimited part-time positions only for those who have, among other things, "been employed continuously for four years between 50 and 80% of a full load."

Here, Mrs. Braxton–Brown had served less than two years at the time of her appointment to unlimited part-time status. Consequently, she had not served the requisite period at the time of her appointment, and subdivision 4, paragraph 1 did not authorize her appointment to an unlimited part-time position. Nor do any of the other provisions in article 18 or elsewhere in the Agreement authorize Chancellor Braxton–Brown's appointment of Mrs. Braxton–Brown to unlimited part-time status.

■ Because the Agreement did not authorize Mrs. Braxton–Brown's appointment to an unlimited part-time position, Mrs. Braxton–Brown was not legitimately a current unlimited part-time faculty member within the meaning of subdivision 4, paragraph 5 when appointed to unlimited full-time status. As a result, subdivision 4, paragraph 5 of the Agreement, which applies only to current unlimited part-time faculty, did not authorize her appointment as an unlimited full-time faculty member.

The Agreement's arbitration clause applies to disputes concerning the interpretation or application of the terms of the Agreement. Mrs. Braxton–Brown's initial appointment to unlimited part-time status and later appointment to unlimited full-time status fall outside the scope of the Agreement. On this record, it is not reasonably debatable that the parties intended to submit this specific dispute to arbitration.

■ Further, an agreement is void to the extent it conflicts with state law. *Kiehne v. Purdy,* 309 N.W.2d 60, 61 (Minn.1981) (finding arbitration clauses void due to conflict with state law).

■ Here, to facilitate the merger of all public technical schools, community colleges, and universities in the state, the legislature specifically vested in MnSCU the authority to appoint faculty and negotiate their contracts.

> Contracts for the period commencing on July 1, 1995, for employees who are in the * * * community college instructional units * * * shall be negotiated under section 43A.06.

Laws 1994, ch. 532, art. 5, sec. 13 (effective April 29, 1994). At the time of Mrs. Braxton–Brown's appointments, section 43A.06 stated in relevant part:

> In consultation with the commissioner of employee relations and except as specified in this paragraph, the higher education board may exercise the powers under this section [to negotiate and administer agreements with unions]. The power and authority to engage in collective bargaining * * * remains with the commissioner of employee relations, who shall exercise those powers in consultation with [MnSCU].

Minn.Stat. § 43A.06, subd. 1(c) (1994). Although MnSCU could delegate this authority after the effective date of the merger legislation, any pre-existing provision in the Agreement permitting someone other than MnSCU to appoint faculty after the April 29, 1994, effective date of the merger legislation for positions continuing beyond July 1, 1995, conflicts with the merger legislation and is void.

■ Although arbitrators are generally the final judges of both law and fact, it is for the courts to interpret statutes where the need for consistency in application of the law so requires. *Johnson v. American Fam. Mut. Ins. Co.,* 426 N.W.2d 419, 421 (Minn. 1988). Here, the legislature seeks to merge the state's technical schools, community colleges, and universities. The merger will significantly affect job security, job control, and other sensitive issues for faculty and other

**690**

employees of public institutions of higher education throughout the state. Consistent application of the law in the courts best effectuates the legislature's purpose. Accordingly, we find that the need for consistency in the application of the law requires that the courts interpret the merger legislation.

### DECISION

The district court properly found MCCFA's grievance not arbitrable. It is not reasonably debatable that the parties intended to submit to arbitration their dispute concerning Mrs. Braxton–Brown's appointments by Chancellor Braxton–Brown.

The merger legislation vests authority to appoint faculty and negotiate their contracts in MnSCU. Any challenge to MnSCU's refusal to recognize Mrs. Braxton–Brown's appointments requires a court, not an arbitrator, to interpret the merger legislation.

**Affirmed.**