STATE, BY CONRAD BALFOUR, COMMISSIONER,
DEPARTMENT OF HUMAN RIGHTS v.
ROY M. BERGERON.

187 N. W. (2d) 680.

June 4, 1971—No. 42624.

*Marvin J. Morrison*, for appellant.

*Warren Spannaus*, Attorney General, *John M .Mason*, Solicitor General, and *Joel L. Wohlgemuth*, Special Assistant Attorney General, for respondent.

ROGOSHESKE, JUSTICE.

Appeal from a district court judgment ordering compliance with an administrative order of the Minnesota Department of Human Rights.

The issue raised on appeal is whether the district court, upon petition for enforcement of an administrative order, may require one who has committed an unfair discriminatory practice as defined in Minn. St. 363.03, subd. 2, by refusing because of the prospective buyer's race to convey parcels of real estate pursuant to a verbal agreement, to reoffer said real estate for sale to the person discriminated against. We affirm the judgment ordering compliance.

This case arises under the Minnesota State Act Against Discrimination, Minn. St. c. 363, which establishes and governs the operation of the Department of Human Rights. As to the issue raised, it is a case of first impression in this state.

As appears from the record and the findings of the hearing examiner, in early 1968, Esther Green, a Negro, became interested in purchasing for investment purposes unimproved acreage located on County Road D in Ramsey County. In January 1969 Miss Green disclosed her interest in purchasing the property to the respondent-owner over the telephone in response to a posted "for sale" sign on the property. During the conversation, respondent advised Miss Green that property comprising an area equivalent to two building lots was for sale for $2,500. Subsequently, Miss Green asked a friend, Evan Bridges, to intercede for her in negotiations with respondent. Complying with this request and acting as Miss Green's agent, Bridges offered respondent $2,000 for the land. During another telephone conversation in April or May, respondent agreed with Bridges to sell the property to Miss Green for $2,250—$500 down and $50 a month payable on a contract for deed plus one-half the cost of a survey necessary to split the land into two lots. On Bridges' advice, Miss Green employed his lawyer to prepare the papers incorporating

the agreement and to obtain from respondent the legal description of the parcels. The lawyer confirmed the agreement, prepared the necessary papers, and made arrangements with respondent to close the transaction and sign the papers in Miss Green's home at 9 a. m. on June 14, 1969. Thereafter, respondent telephoned the lawyer between 8 and 8 :30 a. m. on June 14. After inquiring of the lawyer whether Miss Green was "colored," respondent declared he couldn't sell the property to a "colored person" and did not intend to go through with the closing as planned.[1]

On June 16, Miss Green filed a verified charge with the Department of Human Rights, alleging an unfair discriminatory practice and setting out the details, pursuant to § 363.06, subd. 1. A copy of the charge was served personally on respondent the same day. As provided in § 363.06, subd. 4, the commissioner of human rights then investigated and determined that there was "probable cause to credit the allegation" that respondent had engaged in an unfair discriminatory practice. The commissioner therefore issued a complaint and served on respondent the complaint and a written notice of hearing. As authorized in § 363.06, subd. 4(3), the commissioner also applied for a temporary restraining order prohibiting sale of the property during pendency of the proceedings. This order was issued ex parte on September 12, extended September 19 by stipulation, and made continuous during pendency of the proceedings before the department on October 28. Meanwhile, on August 28, prior to issuance of the restraining order but after the charge was served, respondent transferred title to the property in question to his 18-year-old daughter.

---

[1] During the hearing before an examiner, respondent contested this account of the conversation offered under oath by Miss Green's lawyer. He testified that he told the lawyer he had decided not to sell only because the price was too low and he was no longer in need of the proceeds of the sale. On appeal, however, respondent does not challenge the finding that he was guilty of a discriminatory practice or contend that the evidence is not sufficient to justify such a finding.

Under the act, in addition to his duty to investigate, determine probable cause, issue a complaint, and hold a hearing on a charge of an unfair discriminatory practice, the commissioner of human rights is directed to endeavor to eliminate any unfair discriminatory practice "through education, conference, conciliation and persuasion * * *." § 363.06, subd. 5. When these efforts fail, as they presumably did in the instant case, a hearing is conducted by a three-man panel or an examiner appointed by the commissioner as provided in § 363.071, subd. 1. This hearing is conducted in accordance with the Administrative Procedure Act, Minn. St. 15.01 to 15.41, and is subject to appeal. § 15.0424. If, as in this case, the examiner finds that respondent has engaged in an unfair discriminatory practice as defined in § 363.03, he is directed to make findings of fact and conclusions of law, issue a preliminary cease-and-desist order, and "take such affirmative action as in the judgment of the * * * examiner will effectuate the purposes of this chapter." § 363.071, subd. 2. The respondent may also be ordered to pay the charging party compensatory damages and punitive damages of not less than $25 nor more than $100.

In this case, after a hearing at which Miss Green, respondent, and others testified, the examiner found and determined that respondent and Miss Green had entered into a verbal agreement whereby the latter would purchase the property in question from respondent, that respondent subsequently refused to sell the property because of the prospective buyer's race, and that the transfer of the property to respondent's daughter was a sham and therefore null and void. Pursuant to the remedial provisions of the act cited above, the examiner ordered respondent to cease and desist from engaging in discriminatory practices in the sale of the property, to cancel the sham transfer of land, and within 60 days to offer the land for sale to Miss Green at the original negotiated price of $2,250, with each party paying one-half of the land surveying costs. Respondent was also ordered to pay

Miss Green $25 in compensatory damages (attorney's fee) and $100 in punitive damages.

Respondent did not, as authorized by § 363.072, appeal to the district court, and the examiner's decision became final. Pursuant to § 363.091, the commissioner petitioned the district court to order respondent to comply with the department's order, and an order to show cause was issued by the court. In such a case, the district court reviews the evidence in the record and "may amend the order of the department in any way the court deems just and equitable." § 363.091. After a hearing on May 26, 1970, the district court made an order dated June 4, 1970, enforcing, without amending, the order of the department. As provided for in § 363.10, incorporating Minn. St. 1965, § 605.09(b) and § 605.09(g),[2] respondent appeals to this court from the judgment entered pursuant to the district court's order. Where, as here, the district court has not modified the examiner's order, under the statutory scheme the scope of our review is identical to that of the district court and is governed by § 15.0425 of the Administrative Procedure Act. Consequently, the question we must answer is whether the "affirmative action" authorized by § 363.071, subd. 2, includes ordering respondent-offender to cancel a sham transfer and to reoffer unimproved acreage for sale to one discriminated against.

Respondent does not challenge the jurisdiction of the department, the procedures which resulted in the hearing and the findings and order, nor the sufficiency of the evidence to sustain the examiner's findings. He does contend, however, that § 363.071, subd. 2, does not authorize compelling him to reoffer unimproved real estate for sale. To rule otherwise, respondent argues, would nullify fundamental principles of contract law, since it would, in effect, circumvent the statute of frauds, § 513.01, et seq., because respondent would be required to sell his land even though

---

[2] Minn. St. 1965, § 605.09, has now been superseded by Rule 103.03, Rules of Civil Appellate Procedure. The rule is substantively identical with § 605.09.

the parties had entered into nothing more than an oral agreement.[3]

Without doubt, enforcement of an oral agreement to sell land is barred by the statute of frauds. § 513.04. We must consider, however, the policy of the statute of frauds and the act against discrimination as well as their technical application. The purpose of § 513.04, as its popular name suggests, is to prevent fraud. Schaefer v. Thoeny, 199 Minn. 610, 273 N. W. 190. Respondent here seeks to invoke the statute, not to prevent fraud but to escape what he considers a drastic sanction for unfair racial discrimination. Upon policy considerations, it cannot be said that the court order conflicts with the purpose of the statute of frauds, nor that it enforces an oral agreement to sell land. Although the *practical result* of the order may be to compel specific performance of part of an oral agreement to sell land, its essence is not enforcement of an oral contract but an equitable remedy fashioned to achieve the policy objectives of c. 363. To hold that the statute of frauds barred the remedy devised in this case would frustrate the purpose of the act against discrimination and could well be construed to be state action perpetuating racial discrimination in violation of the Fourteenth Amendment to the United States Constitution. See, Shelley v. Kraemer, 334 U. S. 1, 68 S. Ct. 836, 92 L. ed. 1161. In light of these considerations, we conclude that the statute of frauds does not bar the affirmative relief ordered in this case.

To answer the question of whether the order issued is authorized, we must consider the scope of the remedies authorized by § 363.071, subd. 2. In the case of employment and housing, the act expressly authorizes the affirmative relief of ordering the hiring or reinstatement of an employee or the lease or sale of

---

[3] Although the statute of frauds was not pleaded as a defense, apparently was not raised as an issue before the examiner, and so far as the record reveals, was not raised in proceedings before the district court, we see no persuasive reason to avoid this question on technical grounds.

housing accommodations. In the case of unimproved real estate, affirmative relief is authorized only by the broad language empowering the examiner to take such affirmative action as in his judgment "will effectuate the purposes of this chapter." [4] Section 363.11 directs that this authority be "construed liberally" to accomplish the purposes of the act, which are expressed in § 363.12, subds. 1 and 2, in these words:

"* * * [T]he public policy of this state is to secure for individuals in this state, freedom from discrimination because of race * * * in connection with employment, housing and *real property*, public accommodations, public services, and education. * * *

"Subd. 2. The opportunity to obtain employment, housing, *and other real estate* * * * without discrimination because of race * * * is hereby recognized as and declared to be a civil right." (Italics supplied.)

When § 363.071, subd. 2, is viewed with these purposes in mind, the sanctions intended by the legislature are surely broad enough to authorize the type of remedy ordered in this case. Indeed, the remedy is perhaps the most effective "affirmative action" which the examiner and the district court could have taken to eliminate the consequences of respondent's discriminatory conduct. The United States Supreme Court, construing 14 Stat. 27, 42 USCA, § 1982, a declaratory act passed over 100 years ago granting

---

[4] The Minnesota act does not include a provision comparable to § 706(b)(4) of the Uniform Law Commissioners' Model Anti-Discrimination Act, which provides: "(b) Affirmative action ordered under this section may include but is not limited to

\* \* \* \* \*

"(4) sale, exchange, lease, rental, assignment or sublease of real property to an individual." Handbook of National Conference of Commissioners on Uniform State Laws, 1966, p. 221. For a comprehensive treatment of the two acts, see Auerbach, *The 1967 Amendments to the Minnesota State Act Against Discrimination and the Uniform Law Commissioners' Model Anti-Discrimination Act: A Comparative Analysis and Evaluation*, 52 Minn. L. Rev. 231.

Negroes the same right as is enjoyed by white citizens to purchase real property, noted that the fact that the statute provided no explicit method of enforcement "does not, of course, prevent a federal court from fashioning an effective equitable remedy." Jones v. Mayer Co. 392 U. S. 409, 414, note 13, 88 S. Ct. 2186, 2189, 20 L. ed. (2d) 1189, 1193. If the remedy ordered here could have been devised under authority of 14 Stat. 27, 42 USCA, § 1982, as Jones suggests, it is certainly an appropriate remedy under Minn. St. c. 363 and § 363.071, subd. 2, which sets up enforcement machinery and *specifically* authorizes the examiner to fashion an equitable affirmative remedy in line with the purposes of the act. We therefore hold that the order compelling respondent to cancel the transfer of property to his daughter and to reoffer the land for sale to Miss Green falls within the limits of the authority granted a hearing panel or examiner under § 363.071, subd. 2, and affirm the judgment of the district court.

During oral argument, the state's attorney, without giving prior notice to respondent, asserted that the state should have joined respondent's daughter in proceedings before the examiner and requested that the action be remanded for that purpose. No provision of the act authorizes this court to modify either the order of the district court or the order of the department. The scope of our review is limited to a determination of whether the act empowers the department to issue the order made.

In refusing to remand for further proceedings, we do not intimate that further enforcement proceedings are not available in the event respondent persists in his refusal to comply with the judgment.

Affirmed.