The **UNITED STATES JAYCEES, a nonprofit Missouri corporation, on behalf of its qualified members, Plaintiff,**

v.

**Marilyn E. McCLURE, Commissioner, Minnesota Department of Human Rights, Warren Spannaus, Attorney General of the State of Minnesota, and George A. Beck, Hearing Examiner of the State of Minnesota, Defendants.**

Civ. No. 4–79–530.

United States District Court,
D. Minnesota,
Fourth Division.

March 25, 1982.

---

2. Duncan Campbell, in fact, prays for only some $978,182.00 in damages to himself.

Clay R. Moore, Mackall, Crounse & Moore, Minneapolis, Minn., Carl D. Hall, Jr., Tulsa, Okl., for plaintiff.

Richard L. Varco, Jr., Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER FOR JUDGMENT

DIANA E. MURPHY, District Judge.

Plaintiff United States Jaycees (the Jaycees) brought this action against defendants Marilyn E. McClure, Commissioner of the Minnesota Department of Human Rights (the Department), Warren Spannaus, Attorney General for the State of Minnesota, and George A. Beck, Hearing Examiner for the State of Minnesota, pursuant to 42 U.S.C. § 1983, seeking a judgment declaring Minn. Stat. §§ 363.01(18), and 363.03(3), (6), and (7) unconstitutional and enjoining enforcement thereof, as well as "such costs, attorneys fees and damages as may be proven and allowable." Jurisdiction is alleged under 28 U.S.C. §§ 1331, 1332, and 1343.

Trial was had on August 3, 1981; counsel were given leave to file post trial briefs, and final arguments were heard on January 27, 1982, when the matter was taken under advisement. Based upon the evidence adduced at trial, and all the files, records, and proceedings herein, the court now makes the following findings of fact and conclusions of law in memorandum form.

*Procedural Background*

This case arose from complaints brought by individual members of the Jaycees. On December 14, 1978, four members of the St. Paul chapter of the Jaycees, including its president, filed a charge of discrimination with the Department, based on the Jaycees' policy of forbidding women the same membership status in the Jaycees as men. On December 19, 1978, four members of the Minneapolis chapter of the Jaycees, including its president, filed a similar charge. The Department investigated and found probable cause to believe the Jaycees had violated Minn.Stat. §§ 363.03(3), (6), and (7)[1] and served notice of the finding and an order for a hearing. The Department's attempts to conciliate the matter failed.

The Jaycees filed an action in this court on February 27, 1979, seeking the same relief it now requests but asking the court to abstain from a determination of the merits of the constitutional claims until the conclusion of administrative proceedings before the Department. The district court[2] dismissed the action without prejudice to renewing the action if the Jaycees received

---

1. § 363.03(3) provides in relevant part:
   It is an unfair discriminatory practice: To deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of ... sex
   . . .

   § 363.03(6) forbids intentionally aiding, abetting, or coercing another to engage in any of the practices forbidden by the Human Rights Act.
   § 363.03(7) forbids reprisals for opposing or filing a charge concerning any practices forbidden by the Act.

2. The Honorable Miles W. Lord presiding.

an adverse determination in the state administrative proceeding.

After a hearing, the State Hearing Examiner,[3] issued findings and conclusions which stated that the Jaycees is a place of public accommodation as defined by Minn. Stat. § 363.01(18),[4] and that by subjecting its Minneapolis and St. Paul chapters to sanctions and warning them of an intended vote on revocation of their charters because of their admission of women as individual or regular members, it committed an unfair discriminatory practice in violation of Minn. Stat. § 363.03(3). The hearing examiner, pursuant to Minn.Stat. § 363.071(2),[5] issued a cease and desist order enjoining the Jaycees from 1) revoking the charter of, denying the privilege or right of membership to, or otherwise discriminating against any local chapter or state organization of the Jaycees within Minnesota for extending to women all the rights and privileges of individual or regular membership, or 2) discriminating on the basis of sex against any member or applicant for membership in a Jaycees local chapter within Minnesota with respect to the terms, conditions, or privileges of membership in the local chapter, state organization, or the Jaycees.

The Jaycees then filed the present action. At the request of the parties this court certified the following question to the Minnesota Supreme Court pursuant to Minn. Stat. § 480.061(3):

Is The United States Jaycees a "place of public accommodation" within the meaning of Minn.Stat. § 363.01 Subdivision 18?

By stipulation, the parties agreed that the evidentiary facts relevant to the certified question were those contained in the findings of fact of the hearing examiner and the transcript and exhibits in the record of the state administrative proceeding. The supreme court answered the question in the affirmative. *United States Jaycees v. McClure*, 305 N.W.2d 764, 765 (Minn.1981).

The Minnesota Supreme Court reviewed the legislative history of Minn.Stat. §§ 363.01 and 363.03, as well as the characteristics and practices of the Jaycees. The court concluded that the Jaycees is a place of public accommodation as defined by the legislature in § 363.01(18) because: 1) the Jaycees is a "business" in that it sells goods and extends privileges in exchange for annual membership dues; 2) it is a "public" business in that it solicits and recruits dues paying members but is unselective in admitting them, and 3) it is a public business "facility" in that it continuously recruits and sells memberships at sites within the State of Minnesota. *Id.* at 768.

*Issues Presented*

The Jaycees contends that the actions of the State of Minnesota and the Minnesota Supreme Court deprive it and its members of the right of freedom of association guaranteed by the First and Fourteenth Amendments of the United States Constitution and that the Minnesota statutes, as applied, are unconstitutionally vague and overbroad.[6]

*Facts*

The factual record before this court is essentially the same as that before the Minnesota Supreme Court although additional evidence was introduced here. The record consists of the hearing examiner's findings and conclusions, the transcript and record

3. Defendant George A. Beck.

4. § 363.01(18) provides:
"Place of public accommodation" means a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public.

5. § 363.071(2) provides in relevant part that

if the hearing examiner finds that the respondent has engaged in an unfair discriminatory practice, the hearing examiner shall issue an order directing the respondent to cease and desist from the unfair discriminatory practice found to exist and to take such affirmative action as in the judgment of the examiner will effectuate the purpose of this chapter...

6. In its complaint the Jaycees also alleged a violation of the Equal Protection Clause, but it has chosen not to pursue that claim.

of the state proceedings, the testimony of Arthur W. Boutiette, Executive Vice President of the Jaycees and the organization's historian, exhibits offered during his direct examination, and certain additional exhibits. Having carefully reviewed the record, the court adopts the factual statements of the Minnesota Supreme Court as augmented by its own findings.

The Jaycees is a non-profit corporation, exempt from federal income taxes. It has received no federal funds since 1977 and has never received state funds. There are 51 state organizations affiliated with the Jaycees and approximately 8,800 local Jaycee chapters. Membership in a local chapter automatically enrolls the member in the state and national chapter.

The Jaycees considers itself to be a young men's leadership training organization, serving the goals of individual development, community development, and development of management ability.[7] It claims that the training it offers gives members an advantage in business and civic advancement, and businesses are in fact sometimes requested to pay the dues for individual members. The Jaycees provides its local chapters with programs and materials relative to its stated goals. These include, for example, a personal dynamics program, a public speaking program, Junior Athletic Championships, leadership dynamics materials, and the like. In addition, the Jaycees from time to time issues various policy statements on political and social issues after taking votes of its members either by national referendum or through votes of delegates at national conventions.

One of the major activities of the Jaycees is the sale of memberships in the organization. It encourages continuous recruitment of members with the expressed goal of increasing membership and offers no selection criteria for members, save age and sex. It was primarily on the basis of the manner of the Jaycees sale of memberships that the Minnesota Supreme Court concluded it was a public accommodation as defined in Minn. Stat. § 363.01(18). The Jaycees itself refers to its members as customers and membership as a product it is selling. More than 80 percent of the national officers' time is dedicated to recruitment, and more than half of the available achievement awards are in part conditioned on achievement in recruitment. The Jaycees discourages selective recruitment of members, preferring a high quantity of new recruits. The Executive Director for the affiliated organization of Minnesota has stated that he had no knowledge of a rejection of any application for membership.

The Jaycees has a policy which admits women to membership but does not afford them the same privileges enjoyed by male members. Men, ages 18 to 35, may become individual members, whereas women may be offered only associate memberships. Annual membership dues are only slightly less for associate membership. Associate members are not allowed to stand or be nominated for office, vote in the election of officers, vote in matters of decision in the local, state, or national organizations, or receive achievement awards. They are allowed, however, to participate in and contribute to the success of the programs upon which such awards are based. Men can continue to receive awards after age 35, even though they may then purchase only associate memberships.

The Minneapolis and St. Paul chapters of the Jaycees have disagreed with this policy. In 1974 and 1975 they began to allow women to purchase individual memberships and accorded them the same privileges as male members. On the national level, the Jaycees voted down an amendment to its bylaws that would allow women to buy individual memberships, but set up a "pilot

---

**7.** The Jaycees bylaws state that it is organized to

> promote and foster the growth and development of young men's civic organizations in the United States, designed to inculcate in the individual membership of such organiza-

tion a spirit of genuine Americanism and civic interest, and as a supplementary education institution to provide them with opportunity for personal development and achievement ...

membership program" which allowed local chapters in five states to offer individual memberships to women. In June of 1978, the Jaycees ordered the pilot membership program terminated and again rejected a change in policy to allow women the same membership status as men. Then in 1981, Jaycees members voted in a national referendum not to change the membership status of women, 67 percent voting against the change and 33 percent for.

From 1975 to June of 1978, the Minneapolis chapter was subjected to sanctions for violation of the Jaycees bylaws restricting individual memberships to men. The sanctions included exclusion of the chapter members' votes when computing votes at the national level, disallowing the chapter members from running for state or national office, and declaring the chapter ineligible to host national events.

On December 15, 1978, the Jaycees advised the Minneapolis and St. Paul chapters it planned to vote on whether to revoke their charters because they had violated the bylaws by continuing to afford women equal privileges with men. This occurred on the day after members of the St. Paul chapter filed their complaints with the Department.

*Discussion*

The parties recognize that the Minnesota Supreme Court's interpretation of Minn. Stat. § 363.01(18) represents an authoritative construction of that section and is binding on this court. *N.A.A.C.P. v. Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963). The only question before this court therefore is whether the application of the statute to the Jaycees violates its constitutional rights.

### 1. *Freedom of Association*

■ The Jaycees claims that the application of the Minnesota Human Rights Act to it deprives it of the right to "associate for the purpose of advancing only the interests of young men." This deprivation is alleged to have taken place absent any compelling state interest.

The only First Amendment interest articulated by the Jaycees is freedom of association. It is questionable whether association not directed at the exercise of other First Amendment rights enjoys constitutional protection. *See* L. Tribe, *American Constitutional Law*, at 702 (1976). Supreme Court cases upholding a right of freedom of association have involved association in connection with other protected First Amendment activities. *See, e.g., Widmar v. Vincent*, —— U.S. ——, 102 S.Ct. 269, 276, 70 L.Ed.2d 440 (1981); *Abood v. Detroit Board of Education*, 431 U.S. 209, 235, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261 (1977); *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958). Certain language in decisions of this circuit, however, suggests that freedom of association itself may be a "basic constitutional freedom." *Norbeck v. Davenport Community School District*, 545 F.2d 63, 67 (8th Cir. 1976). *See Greminger v. Seaborne*, 584 F.2d 275, 278 (8th Cir. 1978); *American Federation of State, County and Municipal Employees v. Woodward*, 406 F.2d 137, 139 (8th Cir. 1969) ("The First Amendment protects the right of one citizen to associate with other citizens for any lawful purpose free from government interference."). The Fifth Circuit has held the right of social association itself to be constitutionally protected. *See Aladdin's Castle, Inc. v. City of Mesquite*, 630 F.2d 1029, 1041–1042 (5th Cir. 1980), *rev'd on other grounds*, —— U.S. ——, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). The court need not, however, reach the issue of whether association is itself protected by the First and Fourteenth Amendments. Application of other constitutional principles shows that if there is such a right, it has not been unconstitutionally denied to the Jaycees.

The Jaycees is not afforded affirmative constitutional protection for its practice of distinguishing the rights and privileges of men and women members. "Invidious private discrimination may be characterized as a form of exercising freedom of association... but it has never been accorded affirmative constitutional protections." *Norwood v. Harrison*, 413 U.S. 455, 470, 93 S.Ct.

2804, 2813, 37 L.Ed.2d 728 (1973). While the Jaycees has a right to believe that its organization should only advance the interests of men, its practice of excluding women from equal benefits does not enjoy protection under the circumstances presented. *See Runyon v. McCary*, 427 U.S. 160, 176, 96 S.Ct. 2586, 2597, 49 L.Ed.2d 415 (1976).

Even assuming the Jaycees' membership policy constituted an exercise of a protected right to associational freedom, the state has shown a sufficiently compelling interest to overcome such a right. The right to associate is not absolute; even a significant interference with the right of association may be sustained if the state demonstrates a sufficiently important interest and avoids unnecessary abridgment of First Amendment rights. *Buckley v. Valeo*, 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976).

Minnesota has demonstrated its commitment to prohibiting discrimination in access to public accommodations on the basis of sex. Its legislature has clearly stated that "it is the public policy of this state to secure for persons in this state, freedom from discrimination ... in public accommodation because of ... sex..." Minn.Stat. § 363.-12. The vehicle it has chosen to accomplish this purpose is the Minnesota Human Rights Act, including the provisions at issue in this case.

The legislative history of the act shows the legislative intent and policy behind its prohibitions. That history was set forth in the Minnesota Supreme Court's opinion answering this court's certified question and was the foundation for its analysis. Minnesota has had a law barring racial discrimination in accommodations since 1885, and its coverage has been expanded from time to time since then. Discrimination in public accommodations on the basis of religion and national origin was prohibited in 1943, and on the basis of sex in 1973. The definition of public accommodations has been enlarged and simplified, and ultimately in 1967 came to be focused on a business facility of any kind and "*conduct* in which discrimination would be prohibited" (*United States Jaycees v. McClure*, 305 N.W.2d at 768) rather than on a particular site.[8] The legislature itself declared that the statute should be construed liberally to accomplish its purpose (Minn.Stat. § 363.11) which is to protect the citizens of Minnesota from discrimination (§ 363.12). On this background the court concluded that the legislature had shown "its own special and unusually broad definition of the term 'public accommodation.' " 305 N.W.2d at 766.

Minnesota's interest in preventing discrimination in public accommodations on the basis of sex is compelling. Sex discrimination has been prohibited in some cases by the courts, *see e.g., Frontiero v. Richardson*, 411 U.S. 677, 688, 93 S.Ct. 1764, 1771, 36 L.Ed.2d 583 (1973), and by the United States Congress, *see e.g.,* 42 U.S.C. § 2000e–2 (forbidding discrimination in employment on the basis of sex). Such statutory provisions do not run afoul of the First Amendment. *See Norwood v. Harrison*, 413 U.S. 455, 470, 93 S.Ct. 2804, 2813, 37 L.Ed.2d 723 (1973). Similarly, Minnesota's decision to forbid sex discrimination in public accommodations by use of a carefully drawn statute does not violate the First Amendment. The statute's focus on commercial activity, which occupies "a subordinate position on the scale of First Amendment values..." (*Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978)), further supports this conclusion.

It is the policy of the State of Minnesota set by its elected representatives in its civil rights statute to prohibit sex discrimination to the same extent as racial discrimination. The Minnesota Supreme Court commented that if the Jaycees were discriminating on the basis of race, it would have no difficulty in holding that such action was barred by the statute, and the fact that the discrimination is on the basis of sex should not lead to a different result. 305 N.W.2d at 774.

---

8. Minnesota's statutory definition of public accommodation is significantly different than that of the District of Columbia, making *United States Jaycees v. Bloomfield*, 434 A.2d 1379 (D.C.1981), of little or no value in deciding the issues before this court.

Protection of citizens from discrimination on the basis of sex is a legitimate interest of the State of Minnesota which it has chosen to value highly. Its statutory scheme does no more than require that those organizations which are by their nature public accommodations and which choose to do business in Minnesota offer such accommodations on a nondiscriminatory basis.

Contrary to the Jaycees' contention that its purpose would be destroyed by allowing women full membership, the hearing examiner's order does not require the Jaycees to abandon its purpose of providing leadership training, self improvement, and community involvement to young men. There is no reason to believe that opportunities for young men would be restricted or that male members would not be able to take full advantage of activities and programs offered by the Jaycees if women become full members. *Cf. Lucido v. Cravath, Swaine, & Moore*, 425 F.Supp. 123, 129 (S.D.N.Y.1977) (Application of Title VII to law firm's partnership promotion practices held not to interfere with First Amendment rights.).

The Jaycees argues that Minnesota and its Supreme Court are in conflict with the holding of the Eighth Circuit Court of Appeals in *Junior Chamber of Commerce of Kansas City v. Missouri Chamber of Commerce*, 508 F.2d 1031 (8th Cir. 1975). That case is not controlling here, however. It held that the Jaycees' receipt of government funds did not convert its private action into state action, thereby triggering the due process guarantees of the Fifth Amendment. *Id.* at 1033–1034. The doctrine of state action is not at issue here. The Minnesota court found that because of its special characteristics the Jaycees is a public accommodation within the meaning of the Minnesota civil rights statute. The absence of state action does not preclude an entity's being a public accommodation. There is no doubt that an organization may be regulated by government even if it receives no governmental funding, and such an organization can also be a public accommodation for constitutional purposes if it offers services and facilities to the public.

*See e.g., Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964).

The Jaycees also argues that the hearing examiner's cease and desist order prohibiting revocation of the charter of any local or state organization which extends equal membership privileges to women erodes its right to freedom of association because it requires it to continue to offer services in Minnesota despite what it perceives to be an adverse legal climate. This argument misconstrues the nature of the hearing examiner's order. The purpose of the order was to require the Jaycees to do business in Minnesota in compliance with Minnesota law, if at all. It was obviously not the intent of the hearing examiner to require the Jaycees to continue to sell memberships in Minnesota in perpetuity, but instead to keep it from retaliating against local chapters which choose to obey Minnesota's proscription against sex discrimination in public accommodations.

### 2. *Vagueness and Overbreadth*

■ The Jaycees contends that Minn. Stat. §§ 363.03(3) and 363.01(18) as construed by the Minnesota Supreme Court are unconstitutionally vague and overbroad.

An enactment is void for vagueness if its prohibitions are not clearly defined, or if it does not give a person of ordinary intelligence reason to know what is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The exact application of this due process principle may vary depending on whether the enactment is criminal, penal regulation of business, or civil. *Compare Papchristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972) *with United States v. National Dairy Products Corp.*, 372 U.S. 29, 32–33, 83 S.Ct. 594, 597–98, 9 L.Ed.2d 561 (1963) *and Horn v. Burns and Roe*, 536 F.2d 251, 256 (8th Cir. 1976).

Even if the strict standard normally applied in criminal cases is used, the portions of the statute to which the Jaycees object

are not unconstitutionally vague. The term "place of public accommodation" when construed with normal aids to statutory construction can be understood by those of common understanding to apply to the Jaycees. *See generally Rose v. Locke*, 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975). Both the Minnesota Legislature and the Minnesota Supreme Court have noted that the provisions of the Minnesota Human Rights Act are to be construed liberally to effect its purposes. Minn.Stat. § 363.11; *State v. Bergeron*, 290 Minn. 351, 357, 187 N.W.2d 680, 683–684 (1971). The findings of the Minnesota Supreme Court clearly illustrate the applicability of the statute to the Jaycees, based on facts concerning its recruitment policy and sales of memberships, all of which were well known to the Jaycees. *See United States Jaycees v. McClure*, 305 N.W.2d at 768–774.

The Jaycees attempt to attack the statute as applied for vagueness on the ground that other organizations will be unable to ascertain whether or not they fall within the definition of "place of public accommodation" must be rejected. The Jaycees has no standing to challenge the alleged vagueness of the statute on the basis of its hypothetical application to other groups. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 58–59, 96 S.Ct. 2440, 2446, 49 L.Ed.2d 310 (1976); *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1973); L. Tribe, *American Constitutional Law*, at 720 (1976). Moreover, the Minnesota court in its lengthy discussion of the Jaycees and the statute made it amply clear that the statute only applies to a public business facility. A person of ordinary intelligence can understand what is prohibited by the statute as construed.

A statute which is sufficiently clear to survive an attack on the grounds of vagueness may still be invalid on the basis of overbreadth. The crucial question is whether the provision "sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." *Grayned v. City of Rockford*, 408 U.S. at 115, 92 S.Ct. at 2302; accord *N.A.A.C.P. v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). An over-

breadth challenge does not have the same standing requirement as vagueness; a litigant may raise overbreadth concerns on behalf of others not before the court on the grounds that the challenged statute may cause them "to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). However, overbreadth applies weakly, if at all, in the ordinary commercial context. *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 462 n.20, 98 S.Ct. 1912, 1921 n.20, 56 L.Ed.2d 444 (1978); *Bates v. State Bar of Arizona*, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977). A limiting construction of a statute may narrow it so as to remove any threat to constitutionally protected activity. *Young v. American Mini Theatres, Inc.*, 427 U.S. at 60, 96 S.Ct. at 2447; *Broadrick v. Oklahoma*, 413 U.S. at 613, 93 S.Ct. at 2915.

The statutory provisions at issue are not overbroad, particularly in light of the limiting construction by the Minnesota Supreme Court under which the statute is only applicable to public business facilities which practice sex discrimination. The court explicitly noted that its decision would not affect private associations and memberships, including those which have more selective membership criteria than the Jaycees. *United States Jaycees v. McClure*, 305 N.W.2d at 771.

The Jaycees argued at length that the Minnesota court's interpretation of the statute makes it applicable to a number of organizations including the Boy Scouts, the Kiwanis, the Sweet Adelines, and the like. There is insufficient evidence in the record pertaining to the activities of these groups to allow any determination whether the statute would apply to them and whether the groups engage in protected First Amendment activity. The record as to the Jaycees is, however, well developed. Speculation by the Jaycees as to the future application of the statute to other organizations does not provide a sufficient basis to undermine its constitutionality.

It is noteworthy that the Minnesota Human Rights Act was only applied against the Jaycees after complaints were brought

by some of its own members in Minnesota who believed their rights were being violated by the Jaycees and sought the protection afforded by the statute.

The evidence supports the conclusion drawn by the Minnesota Supreme Court that the Jaycees is "engaged in the business of seeking to advance its members and to add to their ranks by assiduously selling memberships in this state" (305 N.W.2d at 774) on a nonselective basis.

In sum, Minnesota's interest in prohibiting public business facilities from sex discrimination outweighs any protected right of freedom of association the Jaycees may have, and the statute as construed is neither vague nor overbroad. This case must be decided on the basis of the specific statute before the court. Application of that statute against the Jaycees does not violate the Constitution. The statute is not unconstitutional, and judgment shall therefore be entered for defendants.

### ORDER FOR JUDGMENT

Based upon the foregoing,

IT IS HEREBY ORDERED THAT:

1. Judgment herein be entered for defendants and against plaintiff.

2. The parties are to bear their own costs.