**DAVID COMPANY, Respondent,**

v.

**JIM W. MILLER CONSTRUCTION, INC., Petitioner, Appellant.**

**Nos. C6–88–327, C4–88–830.**

Supreme Court of Minnesota.

Sept. 8, 1989.

Ronald E. Martell, Malcom J. McDonald, Leonard W. Glewwe, Moore, Costello & Hart, St. Paul, for appellant.

Philip L. Bruner, Sue Halverson, Peter C. Halls, Hart, Bruner & O'Brien, Minneapolis, for respondent.

KELLEY, Justice.

Appellant Jim W. Miller Construction, Inc. (Miller) contracted with respondent David Company to construct seven townhouses in two phases on a lot owned by respondent on Big Detroit Lake. Following completion of the first phase, a dispute arose between the parties respecting

claimed defective workmanship.[1] Arbitrators chosen to resolve the dispute, as part of their award, ordered the general contractor (Miller) to purchase the real property on which the subject buildings had been erected. The issue presented to us is whether in so doing the arbitrators exceeded their powers. A divided court of appeals panel affirmed a district court order which had affirmed the award.[2] We conclude that although the award formulates an innovative remedy which may appear to be anomalous when compared to traditional arbitration awards, it was within the scope of the broad powers delegated to the arbitrators by the construction contract. The extent and magnitude of the many and serious construction defects; the repeated noncompliance with contract obligations; and the numerous building code violations, all of which, when combined, resulted in David Company receiving a building of slight value, and additionally, an exposure to potential future liabilities, justify the novel remedy fashioned. Therefore, we affirm.

1. Phase I of the project contemplated the construction of four units to be completed by May 10, 1984 for the sum of $345,055, with final payment due on November 14, 1984. Phase II of the project consisted of three additional units with a completion date of October 31, 1984, at a cost of $243,202.

2. On December 30, 1986, the District Court by order confirmed the arbitration award, but made no findings. On March 31, 1987, the court of appeals remanded to the trial court with instructions to make detailed findings on the issue of arbitrability. On January 11, 1988, the trial court made detailed findings on arbitrability and concluded that the arbitrators had not exceeded their authority, and ordered entry of judgment confirming the award pursuant to Minn.Stat. § 572.21 (1986). After its motion for amended findings had been denied, Miller appealed the January 11, 1988 order to the court of appeals which affirmed the trial court in *David Co. v. Jim W. Miller Constr., Inc.,* 428 N.W.2d 590 (Minn.App.1988).

3. Relevant parts of the contract with respect to arbitration are:

*All claims, disputes* and *other matters in question* between the Contractor and the Owner *arising out of,* or *relating to, the Contract Documents or the breach thereof* * * * except for claims which have been waived by the

The construction contract at issue was entitled "General Conditions of the Contract for Construction." It included an arbitration clause by which the parties agreed that "[a]ll claims, disputes and other matters in question * * * arising out of, or relating to, the contract documents or the breach thereof * * * " would be subject to arbitration with the exception of claims waived by the making of final payment.[3]

Shortly after the commencement of construction on Phase I of the project, construction problems began to surface and thereafter continued throughout construction. David Company attributed the recurrence of these problems to Miller's inadequate supervision of subcontractors and its tolerance of poor workmanship by them. Primarily because of those problems, completion of construction on Phase I was delayed beyond the contract completion date of May 1984 to October of that year. David Company claimed this delay not only caused it to lose sales of the units and to incur additional interest and other expense, but, in addition, left it with shoddily constructed units which were unmarketable as

making or acceptance of final payment as provided by Subparagraphs 9.9.4 and 9.9.5, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise * * *. The foregoing agreement to arbitrate and any other agreement to arbitrate * * * shall be specifically enforceable under the prevailing arbitration law. *The award rendered by the arbitrators shall be final,* and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Subparagraph 7.9.1 (emphasis supplied).

Subparagraphs 9.9.4 and 9.9.5 provide:

9.9.4 The making of final payment shall constitute a waiver of all claims by the Owner except those arising from:
1. unsettled liens,
2. faulty or defective Work appearing after Substantial Completion,
3. failure of the Work to comply with the requirements of the Contract Documents, or
4. terms of any special warranties required by the Contract Documents.

9.9.5 The acceptance of final payment shall constitute a waiver of all claims by the Contractor except those previously made in writing and identified by the Contractor as unsettled at the time of the final Application for Payment.

the luxury-type units originally contemplated by the project.

David Company was aware of numerous construction deficiencies, knew they had not been rectified, and that Phase I completion had been delayed for months, when it made final payment to Miller on Phase I in November 1984. Miller argues that the final payment constituted waiver under subparagraphs 9.9.4 and 9.9.5 of the contract. In response, David Company claims it made the payment reluctantly and only after it had been induced to do so by Miller's reaffirmation of its contractual and other legal obligations to remedy all construction deficiencies in its work.

Shortly after making final payment, David Company learned of additional previously unknown extensive and serious construction defects. Moreover, further nonconformities with contract requirements and building code violations emerged. After Miller refused to correct the newly discovered deficiencies, David Company filed its Demand for Arbitration with the American Arbitration Association. In its Demand it alleged breach of contract, negligence and misrepresentation. For relief it requested "compensation for damages in excess of $250,000, including damages which continue to accrue, plus costs, disbursements, attorney fees and interest." It likewise expressly reserved the right to later amend the demand.

A building contractor and two professional engineers were selected by the parties to arbitrate the dispute. The arbitrators heard evidence presented by the parties over a span of three days, heard submissions of counsel for each party, and physically visited the project site to inspect and evaluate the quality of construction.

Evidence presented to the arbitrators revealed numerous and serious construction defects and deficiencies, which, in addition to others, included extensive water infiltration problems, structural damage resulting from the collapse of improperly constructed party walls, absence of anchor bolts, walls out of plumb, and corners out of square.[4] The extent and nature of the construction defects demonstrated gross disregard of standard construction practice, noncompliance with contract requirements, and violation of applicable building codes. Further evidence presented to the arbitrators revealed that the omissions, defects, and overall poor workmanship had resulted in rescission demands from owners to whom David had sold units prior to completion, and had rendered the unsold units, in a practical sense, unmarketable absent extensive and costly repairs.

During the course of his closing argument before the arbitration panel, one of David Company's attorneys, while highlighting the numerous and substantial items of shabby workmanship, observed that his client, and, perhaps as well, vendees who had purchased the units, might be saddled with contingent future liabilities under statutory warranties.[5] He noted that Miller was not only a building contractor, but, as well a developer and owner of real estate thereby implying that, as such, Miller might well better bear that risk than could the respondents. Thereupon, the arbitrators suggested to the parties that they might consider an award resulting in Miller ending up with the project and the property on which it was located in exchange for a cash payment to David Company. Miller's counsel promptly objected on the ground that to so structure

---

4. Water infiltration resulted from improper construction; collapsing walls resulted from absence of or improper installation of footings; and other observed defects reflected poor workmanship throughout, violation of building code requirements, and breach of contract requirements.

5. Minn.Stat. § 327A.02, subd. 1 (1986) provides that "[i]n every sale of a completed dwelling * * * the vendor shall warrant to the vendee that:

 a. During the one year period from and after the warranty date, the dwelling shall be free from defects caused by faulty workmanship and defective materials due to noncompliance with building standards;

 * * * * * *

 c. During the ten year period from and after the warranty date, the dwelling shall be free from major construction defects.

Those warranties extend not only to the initial vendee but also to subsequent purchasers. *See* Minn.Stat. § 327A.01, subd. 6 (1988).

an award, the arbitrators would exceed the power granted to them. Nonetheless, David Company's lawyers prepared an itemized "sell back" option [6] claiming $884,476 in damages. (Claimed damages included consequential damages resulting from construction delay and land costs for unordered and unbuilt Phase II units). The arbitrators' award incorporated the "sell back" option. Alternatively, in the event David Company was unable to convey the property free of liens within 45 days, the award provided for a monetary damages award of $497,925 to be paid to David Company. David Company chose to exercise the "sell back" option, and pursuant thereto, made timely tender of performance. When Miller refused to perform by making the payment as required by the arbitrators' award, David Company commenced an action in district court to confirm the award. Ultimately the trial court issued an order confirming the award and ordering entry of judgment. A majority of the court of appeals panel affirmed the order.

Before this court Miller contends that the arbitrators exceeded their powers within the meaning of Minn.Stat. § 572.19, subd. 1(3) (1988) when they ordered it to purchase real property from David Company when an alternative damage award was likewise made because: (a) the compelled purchase violated strong public policy as codified by the statute of frauds, and, (b) the order for compelled purchase of real estate was not authorized by either the contract between the parties nor the submittal. Miller further asserts that the arbitrators exceeded their powers by inclusion in the purchase figure that was part of the ultimate award, certain claims which, pursuant to the contract documents, Miller claims had been waived by David Company when it made final payment of Phase I of the project in October 1984.

■ 1. We first address the claim that the arbitrators did exceed their powers. Because David Company's Demand for Arbitration claimed relief for negligence, breach of contract and misrepresentation, all of which arose out of, or were relevant to, the contract documents, the issue raised here relates not to the question of arbitrability, but rather to the question of whether the arbitrators exceeded their powers in structuring a remedy. If they did, of course, their award may be vacated (Minn.Stat. § 572.19, subd. 1(3)). While the parties, either by contract or by written submission circumscribing the arbitrator's authority, may limit the arbitrator's authority, absent such consensual limitations, the arbitrators are the final judges of both the facts and the law concerning the merits. *State v. Berthiaume*, 259 N.W.2d 904, 910 (Minn.1977) (citations omitted). Moreover, an award will not be vacated merely because the court may believe the arbitrators erred. *See Cournoyer v. American Television & Radio Co.*, 249 Minn. 577, 580, 83 N.W.2d 409, 411 (1957) (footnote omitted); *Grudem Bros. Co. v. Great Western Piping Corp.*, 297 Minn. 313, 316, 213 N.W.2d 920, 923 (1973); *E.D.S. Constr. v. North End Health Center*, 412 N.W.2d 783, 785 (Minn.App.1987); Minn.Stat. § 572.19, subd. 1(5) (1986) (fact relief could not be granted by a court not a ground for vacating an award).

■ The innovative and unique remedy structured by the arbitrators in the instant case, unlike the customary award ordering payment of monetary damages, may be considered equitable in nature. However, merely because the relief granted is equitable in nature does not, by itself, preclude arbitrators from employing it when otherwise appropriate. Indeed, it appears that our statute contemplates "equitable" as well as "legal" remedies in that it provides that upon confirmation of an award, a "judgment or *decree*" shall be entered. Minn.Stat. § 572.21 (1988) (emphasis added). No prior holdings of this court which involved comparable types of awards in construction disputes have been brought to our attention. However, in the area of

---

**6.** The option was called a "sell back" option because title to the work and materials had passed to David Company from Miller due to payment or by incorporation into the construction as provided in the contract.

labor relations although an agreement itself contained no provision relative to the scope of the authority of the arbitrators to structure a remedy, we observed that "we defer to the arbitrator's discretion, preserving the flexibility which commends arbitration as an effective means of resolving labor disputes." *Children's Hosp. v. Minnesota Nurses Ass'n,* 265 N.W.2d 649 (Minn.1978) (a case where arbitrators "mandated" collective bargaining—arguably an equitable remedy—as an alternative in their award).[7] Courts of sister jurisdictions have construed the scope of the powers granted arbitrators under the identical American Institute of Architects arbitration clause that is before us, or under contract arbitration clauses which, in all material respects, are substantially similar. Generally they have affirmed awards of an equitable nature. *See, e.g., City of Worcester v. Granger Bros., Inc.,* 19 Mass. App. 379, 474 N.E.2d 1151 (1985), *cert. denied,* 394 Mass. 1103, 477 N.E.2d 595 (1985) (award requiring indemnification); *Marion Mfg. Co. v. Long,* 588 F.2d 538 (6th Cir.1978) (specific performance of a contract for sale and purchase of fungible goods); *United States v. Woodcrest Nursing Home,* 706 F.2d 70 (2d Cir.1983) (holding proper for arbitrators to direct conduct necessary to settle matters in dispute). Our cases as well as those from other jurisdictions, of which the cited cases constitute only a sample, reveal the emergence of a general trend of courts, in the absence of limiting language in the contract itself, to accord judicial deference and afford flexibility to arbitrators to fashion awards comporting with the circumstances out of which the disputes arose. Recognition by

us in this case that arbitration awards of an equitable nature may be appropriately fashioned would be entirely consistent with this court's long tradition of favoring the use of arbitration in dispute resolution and rejecting challenges to its employment, which, if granted, would limit, rather than expand, its utility.[8] Thus, we hold that merely because the novel relief structured by the arbitrators in this case may have been equitable in nature does not support appellant's claim that they thereby exceeded their authority. Nonetheless, the power exercised in fashioning the award must have its genesis either from the underlying contract, the arbitration clause itself, or the submission. *See Johnson v. American Family Mut. Ins.,* 426 N.W.2d 419, 420 (Minn.1988) (the contract); *Children's Hosp.,* 265 N.W.2d at 652 (the arbitration agreement); *Metropolitan Waste Control Comm'n v. City of Minnetonka,* 308 Minn. 385, 389, 242 N.W.2d 830, 832 (1976) (the submission).

█ In the instant case the basis for the award cannot be found in the submission. The original demand sought "compensation for damages in excess of $250,000" (later increased to $598,622.45). Prior to the close of the final arguments before the arbitrators, never did David amend its submission demand to seek relief of the nature provided in the award. Rather, it was one of the arbitrators who, after argument, suggested the "sell back" option. When he did so, appellant promptly voiced its objection. Neither expressly nor tacitly did Miller agree that the submission be expanded to authorize a remedy of this type. Nor, with the exception of the arbitration clause itself in the "General Conditions of the

---

7. A need for flexibility in labor arbitration cases has prompted courts to afford deference to arbitrators' awards. *See, e.g., Willoughby Roofing & Supply Co., Inc. v. Kajima Int'l, Inc.* 598 F.Supp. 353, 357 (N.D.Ala.1984); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

8. Although admittedly dicta, in *Zelle v. Chicago & Northwestern Ry.,* 242 Minn. 439, 447, 65 N.W.2d 583, 589 (1954), we clearly stated that the policy of the courts of this state favored alignment with the holdings of courts of sister

jurisdictions which afforded full expansion, rather than limitation, of the powers of arbitrators when we said:

[A]rbitrators may do what no other person acting in the capacity of one who judges can or has a right to do, namely, they may intentionally decide contrary to the law and still have their judgment stand. * * * [I]f the parties have not insisted that the applicable law shall govern the decision on the facts, the arbitrators may decide the dispute according to their notion of justice without regard to the applicable law.

Contract for Construction," does the underlying contract provide any basis for the remedy formulated by the arbitrators. Accordingly, the basis, if any, for the award which was fashioned must depend upon construction of the contract's arbitration clause, the relevant parts of which appear in footnote 3.

■■■ The scope of the arbitration clause is extremely broad. It authorizes arbitrators to decide "[a]ll claims, disputes and other matters in question * * * relating to, the Contract * * * or the breach thereof * * *." No provision in the arbitration clause expressly or implicitly limits the arbitrators to structuring only a remedy calling for the payment of a monetary award nor does any provision expressly authorize, or prohibit, arbitrators from formulating remedies that are equitable in nature. However, in conformity with our long established policy favoring expansion of the arbitration remedy, we conclude that implicit in the exceedingly broad powers which were granted by the parties to the arbitrators to decide "[a]ll claims, disputes, and other matters in question" is a grant of authority to structure an award which is commensurate with the extent, the pervasiveness, and nature of the poor workmanship resulting in construction deficiencies of such patent magnitude which existed. The appellant, and the dissenter in the court of appeals' opinion, argue that the arbitration clause should be more restrictively construed to limit the type of relief to the more traditional monetary award. While it may be correct to surmise that initially neither party specifically contemplated that in case of dispute between them this type of an equitable award might ensue from arbitration, yet both, neither of whom were inexperienced in construction projects of this nature, knew that the project involved the construction of luxury style residential townhomes for immediate resale to third parties, and each were undoubtedly aware of the potential future warranty liability to vendees [9] and subvendees. Nonetheless, the parties executed a contract containing an arbitration clause affording to arbitrators wide and virtually unlimited latitude to fashion a remedy. By their agreement, either initially or in the submission, the parties could have limited the arbitrators' authority. *See, e.g., Metropolitan Waste Control*, 308 Minn. at 385, 242 N.W.2d at 830. They failed to do so. We decline to judicially restrict the powers of the arbitrators which the parties themselves have so broadly granted to them. Nor, in our opinion, does the fact that the arbitrators were able to make an alternative monetary award have relevance to the determination of the scope of the powers delegated to them. By fashioning the award, the arbitrators not only acted within the scope of the broad grant of authority in fashioning the "sell back" option, but also placed the obligation on Miller, the party responsible for the gross construction deficiencies, to remedy them and bear the risk of potential future warranty liabilities arising under Minn.Stat. ch. 327A (1988).

■■■ 2. We next address appellant's claim that the award violates Minn. Stat. § 513.04 (1988) (the Statute of Frauds). The important public policy favoring the utilization of arbitration for dispute resolution, as well as the expansion of the powers of arbitrators to the maximum limits permitted by the arbitration agreement or the submission previously alluded to, weighs against appellant's claim. The public policy underlying the Statute of Frauds is the concern that fraud or perjury will not be rewarded by denying enforcement of alleged contracts that never, in fact, existed. *Radke v. Brenon*, 271 Minn. 35, 134 N.W.2d 887 (1965); *Alamoe Realty Co. v. Mutual Trust Life Ins. Co.*, 202 Minn. 457, 278 N.W. 902 (1938). This arbitration award which ordered a transfer of the real property does not violate that underlying public policy. The arbitrators, rather than a party fraudulently seeking enforcement of a contract to convey property, by their award have ordered the transfer. The award they fashioned pro-

---

**9.** Miller was not only a building construction contractor but was also a real estate developer. David Company's principal was an architect practicing in the Minneapolis–St. Paul metropolitan area.

motes neither fraud nor perjury—concerns which the legislature addressed in enacting the Statute of Frauds. Indeed, the award providing for this relief is not dissimilar to that contained in an administrative order mandating conveyance of real property which we sustained after concluding that the public policy underlying the Anti-discrimination Act (Minn.Stat. ch. 363) (1988) outweighed that served by the Statute of Frauds. *State ex rel. Balfour v. Bergeron*, 290 Minn. 351, 187 N.W.2d 680 (1971). Admittedly in *Balfour* the public policy of the state had been codified by statute and the court's opinion used a public policy comparative statutory analysis. However, Justice Rogosheske, writing for the court, pointed out that to fashion what we considered to be an equitable remedy did not conflict with the Statute of Frauds or result in enforcement of an oral agreement to sell land. *Balfour*, 290 Minn. at 356, 187 N.W.2d at 683. Appellant cites cases from other jurisdictions which it claims support its position that to permit this award would frustrate the Statute of Frauds. The cases cited, in our opinion, are inapposite. Essentially they hold the conveyance void because the submission for arbitration was oral, the amendment was oral, or the description of property in the submission was vague. *See Cutler v. Cutler*, 169 N.C. 482, 86 S.E. 301 (1915); *Tabor v. Craft*, 217 Ala. 276, 116 So. 132 (1928); *Walden v. McKinnon*, 157 Ala. 291, 47 So. 874 (1908). But even if those cases could not be distinguished on those grounds, we opt to not follow them because we believe that the reasoning and implication of the holding in *Balfour* demonstrates that approval of this award does not undermine the concerns addressed by the Statute of Frauds.

3. Finally, appellant asks that we vacate the arbitration award because the arbitrators based the award on the $884,476 in damages itemized by David Company as part of the "sell back" option. Specifically, Miller claims that $242,793 of that sum arose from "carrying costs" associated with Phase I, "out-of-pocket land costs" and "lost profit" associated with the un-built Phase II property. Miller claims that when David Company made final payment on the Phase I project in October 1984, those claims were "waived" and removed from the scope of the parties' arbitration agreement. This claim is essentially based upon subdivision 9.9.4 of the General Conditions (see footnote 3). Miller asserts these items did not involve "faulty or defective work appearing after substantial completion" or "failure of the work to comply with contract documents."

We commence our consideration of this waiver claim by noting that this issue was clearly submitted to the arbitrators. By their award they rejected it. The trial court, although noting its function did not encompass re-examination of the merits, did find that the damages awarded were attributed to "faulty or defective work appearing after substantial completion and from failure of the work to comply with the requirements of the contract documents" and that "David's claims were not waived by the making of final payment." The court of appeals, after noting that the trial court had "found" breach of contract, stated: "Breach of contract is the same thing as 'failure of the work to comply with the requirements of the Contract Documents.' We agree with the trial court's finding 'the award does not include any amounts for Miller's delay in performance despite Miller's promise to complete Phase I by May 10, 1984.'" *David Co.*, 428 N.W.2d at 595. Miller's reliance on *Independent Consol. School Dist. No. 24 v. Carlstrom*, 277 Minn. 117, 151 N.W.2d 784 (1967), is misplaced because the decision was based upon an express time limitation in the contract. Its citation of cases from California and Utah as supporting its position here pivot on particular factual findings not present in the instant case. We are unable to conclude that the arbitrators included amounts in the award which had been waived under the contract by making final payment.

Accordingly, because we hold that the award structured by the arbitrators was

within the powers granted to them by the arbitration clause of the general contract; that the award did not do violence to the underlying policy of the Statute of Frauds; and that the award did not include items which were "waived" by final payment, we affirm.

Affirmed.