**MICHAEL–CURRY COMPANIES, INC., Respondent,**

**v.**

**KNUTSON SHAREHOLDERS LIQUIDATING TRUST, et al., defendants and third-party plaintiffs, petitioners, Appellants,**

**v.**

**John A. CURRY, et al., Third–Party Defendants.**

**No. C6–88–1509.**

Supreme Court of Minnesota.

Dec. 15, 1989.

John L. Devney, J. Patrick McDavitt, Mark J. Ayotte, Briggs & Morgan, P.A., St. Paul, for appellants.

Marvin T. Fabyanske, Gary F. Albrecht, Fabyanske, Svoboda, Westra, Davis, P.A., St. Paul, for respondent.

KEITH, Justice.

The central issue in this case is whether an arbitration clause which provides for arbitration of, *inter alia,* "[a]ny controversy or claim arising out of or relating to * * * the making" of a contract, compels arbitration of a claim that an amendment to the contract was fraudulently induced. The trial court held in the negative. The court of appeals reversed, holding that the clause was sufficiently broad to comprehend that the issue of fraud in the inducement be submitted to arbitration. 434 N.W.2d 671. We affirm.

Appellant Knutson Shareholders Liquidating Trust ("Trust") is a Minnesota Trust formed on or about August 31, 1985. Appellants Douglas E. Heltne and Philip J. LeBrasseur are trustees of the Trust. Respondent is Michael–Curry Companies, Inc., a Minnesota Corporation ("MCCI"). In a stock purchase agreement ("Agreement") dated August 31, 1985, and executed on or about September 16, 1985, Knutson Companies, Inc. ("KCI"), the predecessor of appellant Trust, agreed to sell the stock of D & L Building, Inc. ("D & L"), a wholly-owned Wyoming construction company, to MCCI.[1] The agreement included an arbitration clause which stated in part:

> 13.01 *Arbitration.* Any controversy or claim arising out of, or relating to, this Agreement, or the making, performance, or interpretation thereof, shall be settled by arbitration * * *.

After execution of the Agreement and dissolution of KCI, appellant Trust and MCCI on December 27, 1985 entered into an amendment which guaranteed that MCCI would have a minimum of $125,000 profit on ongoing D & L construction projects. It also contained a provision limiting indemnity by the Trust to MCCI to $250,000. The amendment included a clause that stated "Except for the foregoing Amendment, the Agreement shall remain in full force and effect."

After the amendment was executed, MCCI claimed the D & L projects experienced serious losses and demanded reimbursement under the guaranty of profitability. The Trust refused to reimburse, claiming that the losses on the projects were largely attributable to problems which arose after MCCI purchased D & L but before the parties executed the amendment. The Trust maintains that MCCI knew before execution of the amendment that D & L's business was deteriorating, but failed to disclose these facts to the Trust. The Trust alleges that MCCI was therefore guilty of fraud in the inducement of the amendment.

MCCI maintains that it was unaware of declining profits when the amendment was drafted. John Curry of MCCI asserted that when he negotiated the amendment, he had only the summary of construction contracts for the period ending September 30, 1985. He did not receive the November and December summaries, upon which the Trust relied in its affidavits, until after January 1, 1986. MCCI filed a Demand for Arbitration. The Trust refused to submit to arbitration, basing its refusal upon MCCI's alleged fraud in the inducement of the December 27, 1985 amendment. MCCI then commenced an action against the Trust in district court on a breach of contract theory, seeking damages. The Trust answered and counterclaimed, denying liability and raising fraud in the inducement as a defense. The Trust filed a third-party complaint against John A. Curry and James H. Michael, MCCI's sole shareholders, un-

---

1. This case arose as part of a larger transaction between the subsidiaries of the parties in the instant case. The subsidiaries negotiated two separate agreements for sale of assets and stock of three companies, including this agreement arranging for sale of assets of D & L.

der their personal guarantees, seeking damages and indemnification. This was later dismissed.

MCCI moved the district court for an order compelling arbitration of all claims, pursuant to Minn.Stat. § 572.09(a) (1988). The Trust filed a cross-motion requesting a stay of arbitration pursuant to Minn.Stat. § 572.09 (1988) pending trial court resolution of the fraud in the inducement claim. The trial court directed the parties to proceed with arbitration, and stayed all further court proceedings. The Trust appealed, and the court of appeals denied review, remanding to the trial court for a ruling on whether the Trust's fraud claim should be decided by the court or the arbitrators.

The trial court issued an order on June 14, 1988 which stayed the arbitration and withdrew the court's previous order. The court held that the fraud claim would be decided by the court because the contract between MCCI and the Trust did not include any *specific* agreement between the parties to arbitrate a claim of fraud in the inducement. The Trust dismissed its claims for damages against plaintiff MCCI and third party defendants Michael and Curry. MCCI appealed this order to the court of appeals.

The court of appeals reversed the trial court, holding that the arbitration clause was broad enough to comprehend arbitration of fraud in the inducement of the amendment. This court granted the Trust's petition for review on this issue.

■ 1. The issue of arbitrability is to be determined by ascertaining the intention of the parties through examination of the language of the arbitration agreement. *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). A reviewing court is not bound by the trial court's interpretation of the arbitration agreement and independently determines whether the trial court correctly interpreted the clause. *See Berthiaume*, 259 N.W.2d at 910 n. 8.

The purchase and sale agreement in this case provided that "this Agreement shall be construed in accordance with, and governed by, the laws of the State of Minnesota." Both parties agree that Minnesota law governs the agreement and the amendment, which incorporates the terms of the agreement.

Minn.Stat. § 572.08 (1988) provides that written agreements or contract provisions to arbitrate are valid, enforceable, and irrevocable *absent grounds for revocation of the contract.* Under the procedural rules of Minn.Stat. § 572.09, if one party refuses to arbitrate, the court must order arbitration. A party wishing to stay arbitration must show that there is no agreement to arbitrate. "Such an issue, when in substantial bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party." Minn.Stat. § 572.09(b) (1988). Otherwise the court must order arbitration. *Id.*

A claim of fraud in the inducement puts the "making" of the contract itself in issue. This court has said that "that issue is more properly determined by those trained in the law." *Atcas v. Credit Clearing Corp.*, 292 Minn. 334, 350, 197 N.W.2d 448, 457 (1972). Minnesota has ruled that fraud which vitiates a contract also vitiates an arbitration clause within the contract. *Atcas v. Credit Clearing Corp.*, 292 Minn. at 349, 197 N.W.2d at 457 (1972); Minn.Stat. § 572.08. By claiming fraud in the inducement, the Trust is asserting that no valid agreement to arbitrate exists under Minn.Stat. § 572.09. The court must therefore determine whether the parties agreed to arbitrate the issue of fraud in the inducement.

■ Parties may validly choose to arbitrate all controversies, including fraud in the inducement. *Atcas*, 292 Minn. at 342, 197 N.W.2d at 453. To determine intent to arbitrate fraud in the inducement, the court must look to the language of the arbitration clause. The language in the clause must either (1) specifically show that the parties intended to arbitrate fraud in the inducement, or (2) be "sufficiently broad to comprehend that the issue of fraudulent inducement be arbitrated." *Id.*, 292 Minn. at 347, 197 N.W.2d at 456. If the clause does not specifically include fraud in the inducement and is not sufficiently broad to comprehend it, then a trial must be had on the issue of fraud in the inducement. *Atcas*, 292 Minn. at 348, 197 N.W.2d at 456.

The arbitration clause in the instant case states:

13.01 *Arbitration.* Any controversy or claim arising out of, or relating to, this Agreement, *or the making,* performance, or interpretation thereof, shall be settled by arbitration * * *. (Emphasis supplied).

The clause does not specifically mention fraud. We find, however, that it meets the second prong of the *Atcas* test.

 The clause in this case is broader than the clauses in previous cases this court has considered. First, it provides for arbitration of controversies relating to "the making" of the contract, which clauses *Atcas* and later cases did not contain. The word "making" refers to circumstances surrounding formation of the contract. *See Atcas,* 292 Minn. at 350, 197 N.W.2d at 457 (a claim of fraudulent inducement puts "the making of the agreement itself * * * in issue"). *See also Two Sisters, Inc. v. Gosch & Co.,* 171 Conn. 493, 497, 370 A.2d 1020, 1022 n. 2, 1022–23 (1976) (clause including claims "arising under" the contract or "with respect to the making or validity" of it showed the parties' intent to arbitrate all disputes, including fraud in the inducement); *Prima Paint v. Flood & Conklin Mfg.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967) (under the FAA, a fraud in the inducement claim "goes to the 'making' of the agreement"). It is difficult to see how the parties in this case could have drafted a "broader" agreement.

The Trust attempts to circumvent the *Atcas* "broadly worded" option by arguing that specificity is always required. The Trust argues that the word "fraud" must appear in the arbitration clause. The Minnesota Uniform Arbitration Act changed "the common law policy of judicial

hostility toward arbitration to one favoring arbitration." *Layne–Minnesota Co. v. Regents of Univ. of Mn.,* 266 Minn. 284, 288, 123 N.W.2d 371, 374 (1963). This policy requires the court to give effect to parties' arbitration agreements, and weighs against the Trust's assertion. The Trust's suggested standard would render meaningless the second alternative of the *Atcas* test. Requiring a specific list of all possible claims constituting grounds for rescission would be impractical, defeating the policy favoring arbitration. Further, given the realities of commercial dealings, parties would hesitate to enter into a contract when fraud is mentioned at the outset. *Michael–Curry Companies v. Knutson Shareholders Liquidating Trust,* 434 N.W.2d 671, 676 (Minn.App.1989), *pet. for review granted,* (Minn. filed March 17, 1989).[2]

 2. We are also concerned that parties often allege fraud in the inducement as a final attempt to avoid arbitration. We therefore emphasize that, where a party applies for a stay of arbitration, "circumstances constituting fraud * * * shall be stated with particularity." *See Atcas,* 292 Minn. at 348, 197 N.W.2d at 456 (citing Minn.R.Civ.P. 9.02). Minn.Stat. §§ 572.-09(a) and (b) should not be invoked without such particularity.

For the reasons stated above, we affirm the judgment of the court of appeals and remand to the district court for an order compelling arbitration pursuant to the arbitration clause in the parties' purchase agreement.

---

**2.** In a related area, this court has held that parties who fashion a "broad" arbitration clause must enumerate specifically whatever they wish to exclude from the powers of the arbitrators.

In *David Co. v. Jim W. Miller Constr., Inc.,* 444 N.W.2d 836 (Minn.1989), this court upheld an "innovative and unique" award fashioned by arbitrators as authorized by a broad arbitration clause, even though "it may be correct to surmise that initially neither party specifically contemplated" that such an award could be made.

*Id.* at 840, 842. The parties were experienced in construction; therefore they should have been aware of the extent of the liability and possible awards involved. Thus, if the parties had desired to limit the powers of the arbitrators, they should have specifically expressed this in the broadly-worded arbitration clause. Supporting this conclusion is the "long-established policy favoring expansion of the arbitration remedy." *Id.* at 842.