**James WELCH, et al., Respondents,**

v.

**Steve BULLER, et al., Respondents,**

**Buy–Rite Realty, Respondent (C8–91–1196) Appellant (C1–91–1203),**

**Coldwell Banker, Appellant (C8–91–1196) Respondent (C1–91–1203).**

Nos. C8–91–1196, C1–91–1203.

Court of Appeals of Minnesota.

March 3, 1992.

Review Denied May 15, 1992.

Michael D. Klampe, Rochester, for James Welch, et al.

Douglas A. Boese, Dunlap, Finseth, Berndt & Sandberg, P.A., Rochester, for Steve Buller, et al.

Roger E. Petersen, Petersen & Mulcahey, Rochester, for Buy–Rite Realty.

Craig A. Beck, Dorsey & Whitney, Rochester, for Coldwell Banker.

Considered and decided by KLAPHAKE, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

The purchasers of a piece of real estate sought to rescind a purchase agreement with the sellers, alleging that the sellers and the realtors made misrepresentations or failed to disclose facts about the proper-

ty's water supply. The purchasers alleged this claim was arbitrable under the arbitration clause on the purchase agreement. The arbitrator agreed, and found the realtors liable for the purchase price. The trial court confirmed the arbitrator's award. We affirm.

## FACTS

In September 1989, respondents James and Linda Welch signed a purchase agreement with respondents Steven and Monica Buller, wherein the Welches agreed to buy a home in Oronoco, Minnesota for $101,000. The Welches later asked for an arbitrator to rescind the purchase agreement on the grounds that material facts were withheld from them prior to the sale. These facts consisted of information about the potential impact of a nearby landfill on the water supply of the property. The Welches claim that the misrepresentations and nondisclosures led to their entering into the purchase agreement.

The arbitrator found appellants Buy–Rite Realty, the listing realtor and Coldwell Banker, the showing realtor, liable for fraudulently inducing the sale. The arbitrator decided that the realtors knew or should have known about the potential contamination of the property's water supply. The arbitrator reasoned that the realtors, by failing to disclose the potential danger, were liable for misrepresentation such that the purchase agreement should be rescinded.

The arbitrator also ruled that the Bullers were subject to a lower duty than the realtors. The arbitrator stated that the Bullers themselves could not be liable for nondisclosure; they were only required to be truthful in the disclosures they did make. The arbitrator found that the Bullers had been truthful in the disclosures they made and, therefore, should not be held liable. The arbitrator ordered the purchase agreement rescinded, with the property's title going to the realtors and the realtors returning the $101,000 purchase price to the Welches. The realtors sought judicial review of the arbitrator's award, and the trial court confirmed.

The realtors have appealed the trial court's confirmation of the arbitrator's decision, claiming that the agreement to arbitrate did not include claims of fraud in the inducement. The realtors also allege that water contamination is not an issue contemplated by the arbitration clause, and recision is not an available remedy.

## ISSUES

1. Is "fraud in the inducement" an arbitrable claim under the arbitration clause in the purchase agreement?

2. Is the condition of the property's water supply a claim "relating to the physical condition of the property?"

3. Is recision an available remedy?

4. Did the arbitrator misapply his own theory in arriving at his decision?

## ANALYSIS

The reviewing court is not bound by the arbitrator's decision concerning the arbitrability of the dispute, but instead proceeds de novo. *State v. Berthiaume*, 259 N.W.2d 904, 909 (Minn.1977). Whether the arbitrator was correct in deciding he had the authority to hear the dispute is entitled to an independent judicial resolution. *Michael–Curry Co. v. Knutson Shareholders Liquidating Trust*, 449 N.W.2d 139, 141 (Minn.1989). This rule is contrasted with the general rule that the arbitrator is the final judge of both law and fact. *Berthiaume*, 259 N.W.2d at 910. The court owes no deference to the arbitrator and trial court's conclusion that the dispute fell within the agreement to arbitrate, but the arbitrator's other findings of both law and fact are binding, even if erroneous. *Metropolitan Airports Comm'n v. Metropolitan Airports Police Fed'n*, 443 N.W.2d 519, 524 (Minn.1989).

1. Parties may validly choose to submit any and all controversies, including fraud in the inducement, to arbitration. *Michael–Curry*, 449 N.W.2d at 141 (citing *Atcas v. Credit Clearing Corp.*, 292 Minn. 334, 342, 197 N.W.2d 448, 453 (1972)). The court must examine the language used in the arbitration clause to determine whether

the parties intended to arbitrate fraud in the inducement. *Michael–Curry*, 449 N.W.2d at 141. The Minnesota Supreme Court has established a two-prong test for analyzing the parties' intent as evidenced by the arbitration language:

> The language in the clause must either (1) specifically show that the parties intend to arbitrate fraud in the inducement, or (2) be "sufficiently broad to comprehend that the issue of fraudulent inducement be arbitrated."

*Id.* (quoting *Atcas*, 292 Minn. at 347, 197 N.W.2d at 456).

We must then turn to the specific arbitration clause in this case. The relevant portion of the arbitration clause states:

> *Any claim* or demand of sellers, buyers, brokers or agents, or any of them *arising out of or relating to the physical condition of the property* covered by this purchase agreement (*including* without limitation claims of *fraud, misrepresentation*, warranty and negligence) shall be settled by arbitration.

(Emphasis added.) We must apply the *Atcas* two-prong test to this language to determine whether fraud in the inducement is arbitrable.

The realtors attempt to distinguish the word "fraud" from the phrase "fraud in the inducement" to establish that the arbitrator exceeded his power. The trial court ruled that this distinction was insignificant. We agree.

An issue of fraud in the inducement involves two claims. First, the complaining party claims that fraud occurred. Second, there is a claim that this fraud contributed to the formation of the contract. The issue thus becomes whether the arbitration clause covers these two components of fraud in the inducement.

It is clear that the clause covers the fraud portion of the fraud in the inducement claim as the language specifies "fraud" as an arbitrable claim. The more difficult issue is whether the language is broad enough to include the "inducement" portion of the claim.

The inverse situation was addressed in *Michael–Curry*. In that case, the arbitration clause mentioned the inducement portion of the fraudulent inducement claim but did not mention fraud.[1] The court in *Michael–Curry* held that the arbitration clause was sufficiently broad to include fraud, and fraud did not have to be specifically mentioned for fraud in the inducement to be arbitrable. *Michael–Curry*, 449 N.W.2d at 141–42.

The analogous reasoning applies to the present dispute. The broader term "fraud" includes fraud in the inducement, which is a type of fraud. The realtors concede that "fraud in the inducement is still fraud." They allege, however, that by specifying those claims "arising out of or relating to the physical condition of the property," they have eliminated certain types of fraud from the broad agreement to arbitrate fraud claims. The realtors cannot, however, demonstrate that the fraud relating to the physical condition of the property could not also have induced the contract itself. On the present facts, it appears the nondisclosure of the possibility that the property's water was contaminated was material toward inducing the contract. We must then determine whether the misrepresentations surrounding the property's water supply constitute fraud "arising out of or relating to the physical condition of the property."

■ 2. The realtors argue that the condition of the nearby landfill is a component of a separate piece of real estate and therefore does not fall under the arbitration clause. They try to analogize the contaminated water to "noisy neighbors," claiming the problem is not a physical characteristic of the property.

The Welches, however, are not concerned with the landfill itself, but with the subject property's own water supply. The *effects* of the landfill are seen in the subject property. The trial court was correct in decid-

1. The language used there was: "Any controversy or claim arising out of or relating to, this Agreement, *or the making*, * * * shall be settled by arbitration." *Michael–Curry*, 449 N.W.2d at 142 (emphasis added).

ing that the problem of possible water contamination was a claim "arising out of or relating to the physical condition of the property."

■ 3. The realtors also contend that the Welches waived the remedy of rescission by electing arbitration. They argue that to maintain the contract as a whole is void is to also maintain that the arbitration clause is void. The supreme court's decision in *Michael–Curry* seems to negate the realtors' claim, however. The court there implied that the parties' intent should control, even though it appears counterintuitive to enforce an arbitration clause in a vitiated contract. *Michael–Curry*, 449 N.W.2d at 141. If the arbitration clause seems to evince an intent to arbitrate a fraud in the inducement claim, this intent should control. *Id.*

Additionally, the realtors' reasoning seems to beg the question, for they ask the court to assume the contract was fraudulently induced, thereby vitiating the arbitration clause in the contract and placing the dispute before the court (rather than an arbitrator). There is no dispute to resolve, however, if the contract and the arbitration clause have already been vitiated due to fraud in the inducement. Again, the reasoning becomes counterintuitive and circular. The supreme court apparently has resolved this problem in favor of following the intent of the parties as evidenced by the arbitration clause. *See id.* In this case "fraud" was specifically mentioned, demonstrating an intent to arbitrate fraud in the inducement.

■ 4. Coldwell Banker alleges that the arbitrator's award should be set aside because the arbitrator incorrectly applied his own theory or rule such that the mistake results in a decision not in accord with this reasoning. An arbitrator's "award will not be reviewed or set aside for mistake of either law or fact" unless the arbitrator misapplied *his own theory. Cournoyer v. American Television & Radio Co.*, 249 Minn. 577, 580, 83 N.W.2d 409, 411–12 (1957). An example is a mathematical error which leads the arbitrator to mis-

calculate damages under his own formula. *Id.*

Coldwell Banker's argument that the arbitrator misinterpreted the holdings in *Baker v. Surman*, 361 N.W.2d 108 (Minn. App.1985), and *Berryman v. Riegert*, 286 Minn. 270, 175 N.W.2d 438 (1970) therefore is immaterial. Any misinterpretation of these holdings amounts to a mistake of law, not a misapplication of the arbitrator's own theory. The arbitrator's interpretations create the arbitrator's theory, and he did not misapply this theory in making his decision.

Coldwell Banker also contends that the arbitrator's assumption that the Bullers did not make untrue disclosure is unsupported by the record and the decision should thus be vacated. Coldwell Banker cites some federal cases which hold that vacation is proper if an arbitrator bases an award on a factual assumption which is both central to the decision and incorrect. *See, e.g., United Elec., Radio & Mach. Workers Local 1139 v. Litton*, 704 F.2d 393 (8th Cir.1982). The trial court was not convinced the Bullers made untrue statements in the disclosure statement: "The court believes that the truthfulness of the disclosure statements is subject to argument." The statements could be interpreted as truthful in that it was not entirely clear whether or not the dye itself is a "contaminant" and in that it was not entirely clear the water sampling constituted a "test for contaminants."

Additionally, Coldwell Banker's own argument appears to establish that the Bullers' conduct constituted *nondisclosure* rather than untrue disclosure:

> The sellers' *failure to disclose* that they were conducting daily testing/sampling of their well *caused* the *disclosures they made* to be *misleading* and inaccurate.

This statement reveals that it was the Bullers' nondisclosure, rather than any "affirmative untrue disclosures," that led to the Welches' injury. The arbitrator ruled that the Bullers could not be held liable for nondisclosure.

We cannot say the conclusion that the Bullers were "accurate in the disclosures they did make" has "no support whatever" in the record. *Litton*, 704 F.2d at 396. Accordingly, the arbitrator's decision should not be set aside for this reason either.

### DECISION

The arbitration clause in the purchase agreement encompassed the dispute surrounding the possible contamination of the property's water supply. The clause specifically mentioned "fraud" as an arbitrable claim; therefore, fraud in the inducement is an arbitrable claim. Since the parties demonstrated an intent to arbitrate fraud in the inducement, this intent should control despite the logic problem of enforcing an arbitration clause in a contract sought to be vitiated. The arbitrator did not misapply his own theory in reaching his decision.

Affirmed.